**UNITED STATES of America,**
**Plaintiff,**

v.

**BRUNSWICK – BALKE – COLLENDER COMPANY, Wayne Iron Works, Universal Bleacher Company, Fred Medart Manufacturing Co., Consolidated Foundries and Manufacturing Corporation, Safway Steel Products, Inc., and Fred H. Corray, Defendants.**

**No. 59–C–163.**

United States District Court
E. D. Wisconsin.
March 27, 1962.

658

Earl A. Jinkinson and Francis C. Hoyt, Antitrust Division, Chicago, Ill., for plaintiff.

Marvin E. Klitsner, Foley, Sammond & Lardner, Milwaukee, Wis., and Erwin C. Heininger, Chicago, Ill., for Brunswick-Balke.

James C. Mallien, Milwaukee, Wis., and Earl E. Pollock, Chicago, Ill., for Wayne Iron Works.

Wayne J. Roper, Milwaukee, Wis., and Walker Smith, Chicago, Ill., for Universal Bleacher.

Elwin J. Zarwell, Milwaukee, Wis., and E. Houston Harsha, Chicago, Ill., for Fred Medart Manufacturing Co.

Lewis A. Stocking, Milwaukee, Wis. for Safway Steel Products.

Irvin B. Charne, Milwaukee, Wis., and Samuel H. Young, Chicago, Ill., for Consolidated Foundries and Manufacturing Corp.

TEHAN, Chief Judge.

A motion wherein the moving defendants demand that the court enter a judgment against them containing all the provisions necessary to prevent and restrain the violations of the Sherman Act (15 U. S.C.A. § 1 et seq.) complained of and whereto the plaintiff, United States of America, enters vigorous opposition presents a unique, if not unprecedented, situation. This seeming abandonment of the traditional and natural positions of contending parties can best be understood by a review of the events arising not only in this case but in a companion criminal antitrust action, Criminal Action No. 59–CR–85.

On July 13, 1959, an indictment was returned by the grand jury in this district charging that Brunswick-Balke-Collender Company, Wayne Iron Works, Universal Bleacher Company, Fred Medart Manufacturing Co., Crosby-Miller Corp., Safway Steel Products, Inc., Jack B. Shipman, Charles M. Wetzel, Donald E. Vance, John C. Miller, James Jay and Fred H. Corray, have engaged in a combination and conspiracy in restraint of and to monopolize interstate trade and commerce in folding gymnasium bleachers in violation of § 1 and § 2 of the Sherman Act.

Shortly thereafter, on July 30, 1959, the instant civil action was commenced by the United States of America against Brunswick-Balke-Collender Company, Wayne Iron Works, Universal Bleacher Company, Fred Medart Manufacturing Co., Consolidated Foundries and Manufacturing Corporation, Safway Steel Products, Inc. and Fred H. Corray pursuant to § 4 of the Sherman Act. Thereafter, the time within which the defendants could answer or otherwise plead to the complaint was extended by various orders to April 15, 1960. An answer was filed by the defendant Consolidated

on March 28, 1960. The remaining defendants' motion for an additional extension to June 16, 1960 was granted, over the objection of the plaintiff, on April 15, 1960.

On September 14, 1959, the arraignment in the criminal action took place. The request of all defendants but Safway and Jay for leave to interpose pleas of nolo contendere was fully argued before the court granted such leave and accepted those pleas.

Immediately after the arraignment and plea in the criminal action, the defendants in this civil action, Brunswick, Wayne, Universal, Medart, Safway and Corray, began to negotiate with the Government in an effort to dispose of this action on the basis of a consent decree. To that end, numerous conferences with the plaintiff's counsel in both Chicago and Washington were held. In March of 1960, those defendants acceded to a draft of a proposed consent decree prepared by the Chicago office of the Antitrust Division. They also acceded to revisions in that draft made by the Judgments Sections of the Antitrust Division in Washington, where several additional prohibitions were inserted.

In April of 1960, however, the negotiating defendants were informed that a new policy might be applied to this case which policy would require them to admit liability and concede guilt to any state agency in treble damage actions as a condition to signing of a consent decree by the plaintiff. The court first learned of the difficulties encountered with respect to this policy on April 15, 1960 when those defendants' motion for an extension of time within which to answer or otherwise plead to June 16, 1960 was heard and granted. At this time hope was expressed by counsel for the negotiating defendants that this case might be amicably disposed of. Thereafter further negotiations were held by those defendants with counsel for the plaintiff, but on June 7, 1960 they were informed that the plaintiff would not recede from its position that the new policy should be applied and submitted the following proposed provision to be contained in any consent decree:

"The corporate defendants be enjoined from defending—on the grounds that they have not violated the Sherman Act as charged in the government complaint—any damage proceeding initiated by any state or political subdivision thereof, if such suit were instituted prior to the date of entry of this final judgment."

On June 16, 1960, the negotiating defendants filed a motion for entry of judgment, asking that judgment be entered against them in the form proposed by the Government but without the injunctional provision set forth above. After a conference held on June 20, 1960 with respect to said motion, the court ordered the plaintiff to file a response setting forth its objections to the motion and proposed form of judgment and setting forth the form of consent judgment which it proposed. The plaintiff complied with said order on July 20, 1960. Its proposed form of consent judgment filed on that date was materially identical with that offered by the movants, except that it contained the following provision:

"Each defendant, except Fred M. Corray, is enjoined and restrained, with respect to any suit instituted prior to the date of entry of this Final Judgment by or on behalf of any state or political subdivision thereof under the antitrust laws for damages growing out of the purchase of folding gymnasium bleachers from such defendant, from defending any such suit on the ground, in whole or in part, that such defendant did not engage in a combination and conspiracy as alleged in this action in violation of Section 1 of the Act of Congress of July 2, 1890, commonly known as the Sherman Act; provided, however, that this Section IV shall not be deemed to prohibit any such defendant from asserting that any plaintiff has not been damaged or from contesting the extent of such damages."

At no point did the Government contend that the form of judgment proposed by the moving defendants lacked any provision necessary to prevent and restrain the violations of the Sherman Act charged in the complaint, and it has proposed no additional provision designed to accomplish that end. It is clear that it agrees that all provisions necessary to prevent and restrain the alleged violations are contained in the form of judgment which the defendants ask to have entered.

The motion for entry of judgment came on for hearing on July 7, 1961. On that date the plaintiff informed the court that it would modify its original requirement and approve a consent judgment if the defendants agreed to the inclusion of a provision admitting charges against them and agreeing to an adjudication that they violated § 1 of the Sherman Act as charged, which adjudication would be prima facie evidence against them in treble damage suits instituted by any state or political subdivision thereof or agency thereof prior to the date of signing by defendants of the judgment.

It would appear that the Government in proposing this modification now recognized not only the question of unconstitutionality inherent in the two earlier drafts[1] but also the manifest incongruity that a party who capitulated and thereby spared the Government the expenditure of substantial time and money would end up in immeasurably worse condition than it would if it lost its case after protracted trial.

In opposing the motion for entry of judgment, the plaintiff argues that the moving defendants are, in effect, proposing entry of a consent judgment, but the plaintiff has not and will not consent to the entry of any judgment not incorporating the modified provision heretofore described. It concludes that the court is without authority to enter such a judgment over the objection of the plaintiff. It then explains its refusal to consent as follows:

> Section 5 of the Clayton Act provides that final judgments in civil or criminal proceedings brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated those laws are prima facie evidence against that defendant in any action brought by any other party as to all matters respecting which said judgments would be an estoppel as between the parties thereto. Acceptance of the judgment proposed by the moving defendants would have the same effect as the acceptance by the court in the criminal case of the pleas of nolo contendere, and the plaintiff opposes it for the same reason it opposed acceptance of these pleas, "namely, that this proposed judgment would deprive treble damage plaintiffs of certain benefits provided by Section 5 of the Clayton Act * * *."
> (Page 7, Plaintiff's Memorandum in Opposition to Motion of Defendants for Entry of Judgment) Congress enacted Section 5 of the Clayton Act with the intention of aiding private litigants, unable in many instances to bear the burdens of antitrust litigation, by enabling them to benefit from the government's investigation, preparation, and trial. The benefits which Congress intended to confer upon private litigants can be afforded in this case only if the provision insisted upon by the Government is included in the judgment or if the case is tried and the defendants found guilty.[2]

---

1. The version of § 5 originating in the House of Representatives provided that the judgment obtained by the Government would be conclusive evidence against the defendant in any treble damage action. The Senate version made the judgment only prima facie evidence in the belief that the House provision violated constitutional principles.

2. While the Government in brief and oral argument uses the term "private litigants" without qualification, the beneficiaries of its new policy are limited.

It is clear beyond suggestion of question that the plaintiff opposes the form of judgment submitted by the moving defendants not because the plaintiff itself seeks any further relief from those defendants, but because it wishes to advance the causes of private litigants in suits against those defendants arising out of the antitrust violations here alleged.

The Government's original insistence on the inclusion in the consent judgment of a provision enjoining the defendants from defending civil suits against them on the ground that they did not violate the Sherman Act, and its present insistence that any consent judgment be given prima facie effect stem, as we have stated, from a new policy of the Antitrust Division, a policy which is designed to aid certain treble damage claimants in prosecuting their claims despite the fact that the Government's suit results in the entry of a consent judgment. In our opinion, this policy is an unauthorized attempt on the part of an administrative agency to avoid Congressional intent as clearly set forth in the proviso in § 5 of the Clayton Act.

Section 5 of the Clayton Act (§ 16, Title 15 U.S.C.A.) which is cited by the plaintiff as justification for its policy and for its refusal to enter into the consent judgment here proposed, provides in pertinent part as follows:

> "A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws * * * as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken * * *."

As stated previously, it is the position of the plaintiff that Congress, in enacting that section, intended to secure for treble damage claimants a special advantage, and that entry of the consent judgment proposed by the moving defendants would deprive treble damage claimants of that advantage. It further claims that it has the right and duty therefore to refuse its consent and to resist entry of the decree. It asserts its right to withhold its consent and to insist upon trial, knowing full well that such trial would be costly and protracted, or, in the alternative to require an admission of guilt. This despite the fact that the defendants in the proposed judgment have offered it all the relief it seeks or which after trial of the action it could obtain for itself.

We do not believe that anything in § 5, its legislative history or the cases relied upon by the plaintiff in opposing the motion for entry of judgment now before the court, requires or authorizes the Government to continue to prosecute litigation where the only remaining purpose of the continued prosecution is the establishment of certain benefits for treble damage claimants.

The plaintiff ignores completely the proviso in § 5 making that section inapplicable to consent judgments or decrees. The purpose of that proviso has been well stated in the case of Twin Ports Oil Co. v. Pure Oil Co., et al. (D.C.D.Minn., 1939) 26 F.Supp. 366, as follows:

> "Congress apparently intended to encourage consent judgments and decrees. It sought to induce a prompt surrender to the Government's demands by excluding consent judgments and decrees from the prima facie rule." (Page 371)

> "It seems clear from the discussion on the floor by members of the congressional committee and other members of Congress that the two exceptions or provisos were designed to encourage defendants to submit to the demands of the Government." (Page 374)

> "In effect, Congress said to the law violator, 'It is to your advantage to

capitulate to our demands before any testimony is taken in any equity or criminal proceedings. If you fail, and a decree or judgment is entered against you, such decree or judgment will constitute prima facie proof to any or all private litigants who may have been injured by your unfair practices.' That the expediency of the plan appealed to Congress, and that it intended by the provisos to encourage consent judgments in criminal cases, as well as equity proceedings, can scarcely be gainsaid in view of the congressional record." (Page 376)

The right given to antitrust defendants by the proviso to § 5 to avoid the "prima facie evidence" sanction by capitulation is an unqualified right. No authority or discretion is given to the Department of Justice to deny that right even to the most flagrant violator nor, a fortiori, can it deny that right to one who by fortunes of commerce does substantial business with governmental units or agencies. The Department of Justice here, by withholding its consent, is not only arbitrarily denying the moving defendants this right but frustrating the clear intent of Congress to encourage early entries of injunctional decrees without long and protracted trials.

No one can question but what it was also the intent of Congress in enacting § 5 to aid treble damage claimants in the prosecution of their suits. When that section is read in full, however, it is most clear that the benefits to treble damage claimants come into being and inure to them only when defendants have failed to take advantage of the inducement offered in that section.

It may well be that Congress itself may wish to re-examine the proviso in § 5. And it may well be that after re-examination, Congress would subordinate its present expressed policy of inducing early compliance with the antitrust laws without protracted litigation to the interests of treble damage claimants. This, of course, is a matter for Congress to decide.

However, until Congress so acts, its present express policy should not be subverted by the adoption and imposition of a policy that would thwart the ends sought to be attained by Congress.

We hold therefore that there is no authority in law for the inclusion of the controversial provision under the circumstances here present and that the insistence of the plaintiff on its inclusion constitutes arbitrary and unauthorized conduct. We further hold that this court sitting as a court of equity is not powerless under such circumstances to afford the defendants a form of relief other than the Hobson's choice of either further capitulating to an arbitrary and unauthorized demand of the Government or undergoing the ordeal of a costly and protracted trial.

The judgment tendered on this motion provides the Government with every safeguard needful to accomplish the only proper purpose of this action, that is, the prevention and restraint of the violations of the Sherman Act. In moving for the entry of such judgment, the moving defendants must be held to have done everything in their power to qualify for the benefits extended to antitrust defendants under the proviso of § 5 of the Clayton Act. We further hold that all issues between the moving defendants and the Government stand resolved and there remains no just reason for delaying the entry of final judgment as to them.

The motion of the defendants, Brunswick-Balke-Collender Company, Wayne Iron Works, Universal Bleacher Company, Fred Medart Manufacturing Co., and Safway Steel Products, Inc. for entry of judgment is hereby granted. The defendant, Fred H. Corray is excluded due to the fact that he entered into a consent judgment with the plaintiff subsequent to the filing of this motion.

The moving defendants will prepare a form of judgment in accordance with this opinion reflecting the fact that Fred H. Corray is no longer a movant, and submit it to the plaintiff for approval as to form.