## UNITED STATES *v.* WARD BAKING CO. ET AL.

No. 101.   Argued February 18, 1964.—Decided March 9, 1964.

*Assistant Attorney General Orrick* argued the cause for the United States.   With him on the brief were *Solicitor General Cox, Philip B. Heymann* and *Lionel Kestenbaum*.

*Davisson F. Dunlap* argued the cause for appellees. With him on the brief were *John W. Ball, Charles L. Gowen, John B. Miller* and *John H. Boman, Jr.*

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

This appeal raises the question of whether and under what circumstances a District Court may properly enter a "consent" judgment in a civil antitrust suit without the consent of the Government and without trial of certain disputed issues.

On July 21, 1961, the Government filed a civil complaint [1] in the United States District Court for the Middle

---

[1] In March 1961 an indictment had been returned against the five bakery companies charging them with violating the Sherman Act by committing substantially the same acts as were charged in the subsequent civil complaint.   Four of appellee companies, and two other companies, had also been charged with conspiring to fix the price of bread and rolls on sales to nongovernment wholesale accounts, defined as "grocery stores, supermarkets, restaurants, hotels and similar large purchasers . . . ."   All the defendants submitted, over

District of Florida. The complaint charged the five appellee bakery companies with violating § 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 1,[2] by conspiring:

> "(a) To allocate among themselves the business of supplying bakery products [defined as bread and rolls] to the United States Naval installations in the Jacksonville area; and
>
> "(b) To submit noncompetitive, collusive, and rigged bids and price quotations for supplying bakery products to United States Naval installations in the Jacksonville area."

The Government sought relief, including an adjudication that the companies had violated the Act, an injunction- against allocating business or fixing prices in the supplying of bakery products to United States naval installations in the Jacksonville area, and "such further, general, and different relief as the nature of the case may require and the Court may deem appropriate in the premises."

On May 8, 1962, after an extensive period of settlement negotiations, the bakery companies filed with the court a proposed form of judgment which would have enjoined the companies from conspiring to:

> "(a) Submit noncompetitive, collusive or rigged bids, or quotations for supplying bakery products *to United States Naval installations in the Jacksonville area*, or

---

the objection of the Government, pleas of *nolo contendere* and fines were imposed. The same judge presided in both the criminal and civil cases.

[2] The companies were also charged with violating the False Claims Act, Revised Statutes §§ 3490, 3491, 3492, 5438, as amended, 31 U. S. C. §§ 231–233, derived from the Act of March 2, 1863, 12 Stat. 696. This was settled by a payment of $44,000.

"(b) Allocate, divide or rotate the business of supplying bakery products to *United States Naval installations in the Jacksonville area.*" (Emphasis added.)

The proposed judgment would also have required the companies to include sworn statements of noncollusion in each bid for bakery products submitted to any naval installations in the Jacksonville area for the following *three* years.

The District Court ordered the Government to show cause "why the said proposed judgment . . . should not be entered." The Government replied, objecting "to confining the scope of the injunction to bids for supplying bread and rolls to United States Naval Installations in the Jacksonville area" and "to limiting the requirement . . . that bids be accompanied by sworn statements of non-collusion, to a three year period."

The bakery companies then filed an amended motion for entry of consent judgment, containing two significant changes in their original proposal. Its scope was broadened to include all bakery products, not only bread and rolls, and to include all sales to the United States, not only to its naval installations in the Jacksonville area. Subsequently, at the hearing on the order to show cause, the companies agreed to increase, from three to five years, the period during which they were to submit sworn statements of noncollusion.

The Government opposed entry of the amended proposed consent judgment on the ground that it still omitted two necessary items of relief:

"(1) a general injunction against conspiring to fix the price of bakery products to any third party other than the Government, and (2) an injunction against urging or suggesting to any seller of bakery products the quotation or charging of any price or other terms or conditions of sale of bakery products."

Despite these objections, the District Court entered the amended "consent" judgment proposed by the companies. The judgment recited that it was entered "without trial or adjudication of any of the issues of fact or law herein and before the taking of any testimony . . . ." In his opinion accompanying the entry of judgment, the district judge said:

"The demand of the plaintiff as to the inclusion of the two controversial provisions in its tendered judgment does not have a reasonable basis under the circumstances here present. . . . Based upon this court's knowledge of the facts involved in Case No. 11677–Crim–J and this record, the proposed judgment which the court is entering provides all the relief to which the plaintiff would be entitled after the entry of a decree pro confesso against each defendant and after a trial on the allegations of this complaint. . . . The mere fact that a court has found a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged."

The Government, pursuant to § 2 of the Expediting Act, 32 Stat. 823, as amended, 15 U. S. C. § 29, appealed directly to this Court from the entry of judgment. Probable jurisdiction was noted. 374 U. S. 803. We conclude that the additional relief sought by the Government had a reasonable basis under the circumstances and that, consequently, the District Court erred in entering the "consent" judgment without the Government's actual consent.

This Court has recognized that a "full exploration of facts is usually necessary in order [for the District Court]

properly to draw [an antitrust] decree" so as "to prevent future violations and eradicate existing evils." *Associated Press* v. *United States,* 326 U. S. 1, 22. After a District Court has concluded that a conspiracy in restraint of trade exists, it:

> "has the duty to compel action by the conspirators that will, so far as practicable, cure the ill effects of the illegal conduct, and assure the public freedom from its continuance. Such action is not limited to prohibition of the proven means by which the evil was accomplished, but may range broadly through practices connected with acts actually found to be illegal. Acts entirely proper when viewed alone may be prohibited. The conspirators should, so far as practicable, be denied future benefits from their forbidden conduct. . . . [R]elief, to be effective, must go beyond the narrow limits of the proven violation." *United States* v. *United States Gypsum Co.,* 340 U. S. 76, 88–89, 90.

It would be a rare case where all the facts necessary for a trial court to decide whether a disputed item of relief was warranted could be determined without an "opportunity to know the record." *Id.,* at 89. This is not such a case.

The dispute here concerned whether the injunction should include prohibitions against (1) price fixing in sales to parties other than the United States Government, and (2) "urging or suggesting to any seller of bakery products the quotation or charging of any price or other terms or conditions of sale of bakery products."

The conspiracy alleged in the complaint was a particularly flagrant one. The complaint charged specifically that:

> "Representatives of the defendants held meetings and conferred by telephone for the purpose of allo-

cating among the defendants the business of supplying bakery products to United States Naval installations in the Jacksonville area. The business was allocated in such a manner as to provide each defendant with the business for a designated quarterly period of the year. When invitations to bid were received from the Naval installations in the Jacksonville area, said representatives would again meet and confer and the representatives of the defendant designated for the particular period would declare the prices which that defendant intended to bid. The others would agree to bid higher prices and thus protect the bid of the designated low bidder."

As this Court has said: "Acts in disregard of law call for repression by sterner measures than where the steps could reasonably have been thought permissible." 340 U. S., at 89–90. The acts here alleged could not, under any theory, have been thought permissible. "It is a salutary principle that when one has been found to have committed acts in violation of a law he may be restrained from committing other related unlawful acts." *Labor Board* v. *Express Pub. Co.*, 312 U. S. 426, 436.

The allegedly illegal acts were surrounded by "circumstances," *United States* v. *United States Gypsum Co., supra,* at 89, which did not preclude the possibility that the relief sought by the Government would be warranted. In fact, the circumstances tended to support the view that the practices which the Government sought to enjoin were "connected" with and "related" to practices which the companies may in the past have followed. The Government informed the District Court that "on June 27, 1962, a federal grand jury in Philadelphia indicted the defendant Ward Baking Company on a charge of conspiring with five other baking companies to fix the prices of 'economy' bread sold in the Philadelphia-Trenton

area." The record before the District Court showed, moreover, that four of the defendants had previously pleaded *nolo contendere* to charges of conspiring to fix prices on sales to *nongovernment* accounts, such as "grocery stores, supermarkets, restaurants, hotels and similar large purchasers." Thus, the surrounding circumstances suggest the possibility of a conspiracy reaching beyond the Jacksonville area, beyond bread and rolls, and, most significantly, beyond sales to the Government.

Against this background, it cannot reasonably be assumed that the Government could not, at the trial, have introduced evidence justifying, in whole or in part, the relief sought.[3] This is not to say, of course, that the District Court could not correctly have concluded, after trial and an "opportunity to know the record and to appraise the need for prohibitions or affirmative actions," *United States* v. *United States Gypsum Co., supra,* at 89, that the requested relief was not warranted. Under the circumstances of this case, however, it could not so conclude without a trial.[4]

---

[3] The disputed provisions certainly may be regarded as within the general scope of the relief sought in the complaint, which included a request for "such further, general, and different relief as the nature of the case may require and the Court may deem appropriate in the premises." It should be noted in this regard that the companies did accede to a number of government demands which went beyond the violations charged or the specific relief requested.

[4] It is not contended that this would have been a proper case for the entry of summary judgment. The critical question was whether the Government could produce evidence at trial warranting the relief sought. The companies claim, however, that if the Government had such evidence, it should have produced that evidence in response to the District Court's order to show cause why the companies' proposed consent judgment should not be entered. The show-cause order cannot properly be read as a demand that the Government detail or tender the evidence it proposed to offer at trial. The Government's response, which specified its legal and factual objec-

Since we conclude that there was a bona fide disagreement concerning substantive items of relief which could be resolved only by trial, we need not, and do not, reach appellees' contention that, where there is agreement on every substantive item of relief, insistence by the Government upon an adjudication of guilt as a condition to giving its consent to a judgment would conflict with the congressional policy embodied in § 5 of the Clayton Act, 38 Stat. 731, as amended, 15 U. S. C. § 16.[5] Compare, *United States* v. *Brunswick-Balke-Collender Co.*, 203 F. Supp. 657. We decide only that where the Government seeks an item of relief to which evidence adduced at trial may show that it is entitled, the District Court may not enter a "consent" judgment without the actual consent of the Government. There is nothing in the language or legislative history of § 5 of the Clayton Act indicating that Congress intended to give a defendant the privilege of rejecting the bona fide demands of the Government and at the same time avoiding an adjudication on the merits of the complaint. The companies argued before the District Court that they should not be "foreclosed from a

---

tions to the entry of the proposed decree and informed the court of the Philadelphia-Trenton indictment, *ante,* at 332–333, was a full and satisfactory response to the show-cause order.

[5] The Clayton Act, § 5 (a), 38 Stat. 731, as amended, 15 U. S. C. § 16, provides as follows:

"A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title."

right to go to trial if [the District Court decides] to enter the Government's Decree." Nor should the Government be foreclosed from that same right where, as here, the District Court decides, over the Government's objection, to enter the companies' proposed decree.

Accordingly, the judgment is vacated and the case is remanded for trial.

*It is so ordered.*