**UNITED STATES of America, Plaintiff,**

v.

**AMERICAN BAKERIES COMPANY et al., Defendants.**

**Crim. No. 7656.**

United States District Court
W. D. Michigan, S. D.

June 18, 1968.

John Edward Burke, Dept. of Justice, Chicago, Ill., for plaintiff.

Warner, Norcross & Judd, Harold S. Sawyer, Grand Rapids, Mich., Covington & Burling, Gerald P. Norton, Washington, D. C., for defendants Continental Baking Co. and Ray W. Moore.

Cholette, Perkins & Buchanan, Grant J. Gruel, Grand Rapids, Mich., Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, William I. Goldberg, Chicago, Ill., for defendant American Bakeries.

Wheeler, Upham, Bryant & Uhl, Gordon B. Wheeler, Grand Rapids, Mich., Kirkland, Ellis, Hodson, Chaffitz & Masters, Ronald J. Wilson, Washington, D. C., for defendants, Rainbo Bread Co., Samuel A. McLaughlin, and Charles A. Stewart.

Glassen, Parr, Rhead & McLean, Lloyd D. Parr, Lansing, Mich., for Schafer Bakeries, Inc., Russell E. Kisor, Gase Baking Co. and Eugene J. Gase.

Dickinson, Wright, McKean & Cudlip, John A. Krsul, Jr., Detroit, Mich., for defendant Michigan Bakeries, Inc.

McCobb & Heaney, Bruce K. Carroll, Grand Rapids, Mich., for defendant Harold C. Overholt.

Hillman, Baxter & Hammond, Douglas W. Hillman, Grand Rapids, Mich., for defendant Norman V. Clexton.

Charles E. Hopfl, New York City, for defendants Ward Foods, Inc.

Luyendyk, Hainer & Karr, John D. B. Luyendyk, Grand Rapids, Mich., for defendants Grocers Baking Co. and L. S. Parsons.

Chadwell, Keck, Kayser, Ruggles & McLaren, David J. Gibbons, Chicago, Ill., for Koepplinger Bakery, Inc. and Robert Bohringer.

Edward L. Cobb, Jackson, Mich., for defendant Way Baking Co.

Varnum, Riddering, Wierengo & Christenson, F. William Hutchinson, Grand Rapids, Mich., for Roskam Baking Co. and Donald O. Roskam.

Paulson, Bennett, Palmer & Lewis, Robert A. Palmer, Kalamazoo, Mich., for Dutch Treat Bakers, Inc. and Walter Henley, Jr.

Foster, Campbell, Lindemer & McGurrin, Richard B. Foster, Lansing, Mich., for defendant Michigan Bakers Association, Inc.

Goldstein, Judd & Gurfein, Edward Brodsky, New York City, for defendant Silvercup Bakeries, Inc.

Miller, Johnson, Snell & Cummiskey, Stephen C. Brandsdorfer, Grand Rapids, Mich., for defendant John H. Way, Sr.

Schmidt, Smith & Howlett, Richard L. Spindle, Grand Rapids, Mich., for defendant William J. Coughlin.

On Petition to Reconsider

FOX, District Judge.

Defendants petition the court to reconsider its refusal to accept their pleas of nolo contendere to a criminal antitrust action by the Government. This refusal was given from the bench on March 15, 1968, and a clarification published in 284 F.Supp. 864 (W.D.Mich.1968). The facts of the case, other than new facts which have subsequently come to light, may be found in that opinion.

The petition requests reconsideration because there is good cause for allowing defendants to plead nolo, and because equal protection requires that they be treated in the same manner as other defendants in this case, whose nolo pleas this court has accepted. 284 F.Supp. 864 (W.D.Mich.1968).

Defendants allege that nolo pleas should be accepted as a matter of course in antitrust cases, absent unusual circumstances. Defendants further argue that there are no unusual circumstances in this case, and that what circumstances there are support the granting of nolo.

As this court originally decided, nolo pleas should be neither accepted nor rejected as a matter of course. Rather the court should analyze the facts of each case, and apply the public interest in determining whether to accept the nolo pleas. 284 F.Supp. 864 (W.D.Mich. 1968).

The important factors to be taken into account were listed by this court in its

former opinion accepting some nolo pleas and rejecting others:

1. nature of the violations;
2. length of the violations;
3. size and power of defendants;
4. prior antitrust violations of defendants;
5. impact of the condemned conduct on the company; and
6. impact of the litigation on the economy.

(284 F.Supp. 864, W.D.Mich.1968).

Applying these factors to the various defendants, this court found the public interest to favor the acceptance of nolo pleas from the smaller, independent bakeries, but to deny them to the larger, major bakeries. Without more, those factors would provide a rational means of distinguishing between defendants. Hence, defendants' claim of denial of equal protection is without merit.

Since the first decision, new dimensions have been added to the litigation. Motions made to this court and a hearing held June 7, 1968, have raised extremely complex and close legal and factual issues.

The public interest may be served by the expeditious resolution of potentially protracted cases involving close legal questions which make disposition at the appellate level uncertain.

Although this action was by information, two grand juries conducted an investigation of this case and the second grand jury returned an indictment. That indictment was dismissed by the Government, and a subsequent proceeding brought by information.

Defendants seek discovery before trial of all information gathered by the grand juries. This motion contrasts the traditional rule of secrecy relative to grand jury testimony, United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), with the current trend toward liberalization of this type of discovery, Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). But to grant defendants' motion would be to go beyond Dennis. Thus, a close question of law is presented by this issue.

Defendants also move for a bill of particulars, which involves answering at least twenty detailed questions. A thorough analysis by the court of each question would be necessary before this motion could be acted upon.

Another motion made by defendants is for a change of venue because of local prejudice and inconvenience. Although this is largely a question of judicial discretion, close factual questions are presented, especially as to the inconvenience argument.

The most important new information brought before this court concerns the means by which the grand jury was chosen, the composition of the indicting grand jury, and the effects of a defective indicting grand jury on a subsequent proceeding by information.

The "key man" system was used to select the grand jury in this case. Under this system certain key men are selected from each county in the district and asked to suggest names from their county to be placed in the jury box. Most of these key men are postmasters, school superintendents, bank officers, and county clerks.

A single county clerk furnished at least 250 names at one time without any showing of an attempt to obtain a fair cross section. This fact raises a serious question as to whether the responsibilities of the jury commission have been illegally delegated.

Many of the key men were sent a letter by the clerk and the jury commissioner requesting them to nominate names to be placed in the jury box. The letter listed the statutory qualifications of jurors established in 28 U.S.C. § 1861, and in addition stated, " * * * [p]lease bear in mind that a prospective juror should be esteemed in his community as a person of good character, approved integrity, sound judgment and fair education." The letter also asked, "that you make a conscious effort to include both men and women from a variety of backgrounds and occupations so as to give us, as nearly as

possible, a representative cross section of your community."

This letter is almost an exact copy of the form letter suggested in 26 F.R.D. 409, 513–514, by the Judicial Conference of the United States in 1960.

The interpretation of this letter by the key men who received it is impossible to determine, since no record was kept and the clerk cannot remember who the key men were. The only suggestion as to how the standards were applied comes from an analysis of the people who were nominated by the key men.

By compiling the information from questionnaires completed by some prospective jurors, the following disparities are evidenced between the jury panel and a representative cross section of the community.

| Class | % on Panel | % in Community |
|---|---|---|
| Equipment operators and laborers | 5.1% | 30.9% |
| Persons under thirty | 4.6% | 18.6% |
| Persons without high school diplomas, but meeting the minimum educational standards of the statute | 16.5% | 48.9% |

Defendants claim that these disparities prove the inherent prejudice of the key man system against the lower classes of society and against younger people, and that the jury commission has not met its responsibility to take positive steps to insure that the jury panel represents a fair cross section of the community.

The Circuit Courts of Appeals are in conflict as to whether a grand jury selected and constituted as this one was is permissible. The Sixth Circuit in United States v. Hoffa, 349 F.2d 20 (6th Cir., 1965), exhibits a sharp contrast to the views expressed by the Fifth Circuit in Rabinowitz v. United States, 366 F.2d 34 (5th Cir.,1966).

For example, Rabinowitz suggests that tendencies, "no matter how slight," toward the selection of jurors by any method other than a process which will insure a trial by a representative group, are unacceptable. (366 F.2d at 45.) Hoffa, on the other hand, clearly allows more than a slight deviation from a cross section of the community. (349 F.2d at 31.)

Rabinowitz holds that the statutory standards for jurors are the only standards to be applied—no "vague" additional standards are permitted. (366 F.2d at 51.) Hoffa upheld a system where such vague standards were applied. (349 F.2d at 31.)

Rabinowitz states that no systematic exclusion is required to make the system invalid if the system itself inherently provides an unrepresentative cross section. (366 F.2d at 56.) Hoffa implies that only a systematic exclusion is suspect. (349 F.2d at 30.)

Each of these differences has obvious significance in this case. The grand jury might well be valid under Hoffa but invalid under Rabinowitz. And although the Hoffa case controls courts in this Circuit, the Rabinowitz decision is more representative of the current trend, especially as is exemplified by the Report of the Committee on the Operation of the Jury System of the Judicial Conference of the United States, 42 F.R.D. 353 (1967), and the Jury Selection and Service Act of 1968 (amendments to 28 U.S.C. §§ 1861–1869).

If the grand jury were found to be improperly constituted, should this court preclude the government from using the fruits of any information gathered by the grand jury?

Defendants cite the usual cases for suppression of evidence improperly

obtained: Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Olmstead v. United States, 277 U.S. 438, 485, 48 S.Ct. 564, 72 L.Ed. 944 (1928); Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Miranda v. State of Arizona, 384 U.S. 436, 480, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966); Berger v. State of New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).

The Government relies on United States v. Wallace & Tiernan Co., 336 U.S. 793, 69 S.Ct. 824, 93 L.Ed. 1042 (1948), which held that when an indictment by an invalid grand jury is dismissed, the invalidity of the panel does not prevent the Government from using the evidence gathered by the grand jury in a subsequent civil proceeding.

This case differs from Wallace & Tiernan in that this is a subsequent *criminal* proceeding. An extremely close question to be answered is whether the criminal proceeding is different from the civil proceeding in ways which would argue for suppression of the evidence.

The existence of this multiplicity of close legal issues insures a long period before trial, a long trial, and an even longer appeal process after trial. But the intent of the statute authorizing pleas of nolo contendere was to avoid protracted litigation and to shorten the time between any violation and sentencing. Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 323 F.2d 412, 415 (7th Cir., 1963); Twin Ports Oil Co. v. Pure Oil Co., 26 F. Supp. 366, 374, 376 (D.Minn.1936); United States v. Brunswick-Balke-Collender Company, 203 F.Supp. 657, 661, 662 (E.D.Wis.1962); 51 Cong.Rec. 15824, 16004 (1914).

Furthermore, if the determination of any of these issues should result in reversal, all the time spent by the defendants, the Government and the Federal Courts will have been wasted.

These considerations, made real by the number of close legal questions raised since the plea of nolo contendere was refused, cause this court to determine that the public interest would be best served by accepting the pleas of nolo contendere.

The mere multiplicity of motions and legal issues involved have not, in and of themselves, persuaded this court to rule as it has. And this decision should in no way be construed in that fashion. Mere numbers of motions and issues will not frighten this court, nor any of the federal courts, into accepting a nolo plea.

What has persuaded this court are the serious and close legal issues involved in this case, particularly with regard to the composition of the grand jury and the uses to which the fruits of the grand jury testimony may be put.

The petition for reconsideration of the pleas of nolo contendere is granted, and the pleas are accepted.

It is so ordered.