UNITED STATES of America, by Ramsey CLARK, Attorney General of the United States, Plaintiff-Appellant,

v.

Richard Ebbert GRAMER d/b/a Tall Pine Inn Restaurant, Defendant-Appellee.

No. 26746.

United States Court of Appeals Fifth Circuit.

Oct. 10, 1969.

Mitchell, District Judge, dissented in part.

Gary J. Greenberg, Atty., Dept. of Justice, Washington, D. C., Richard B. Hardee, U. S. Atty., Tyler, Tex., Carl R. Roth, Asst. U. S. Atty., Stephen J. Pollak, Asst. Atty. Gen., for plaintiff-appellant.

Clyde E. Smith, Jr., Woodville, Tex., for defendant-appellee.

Before AINSWORTH and SIMPSON, Circuit Judges, and MITCHELL, District Judge.

SIMPSON, Circuit Judge:

This appeal is from a "consent" decree entered without a trial by the trial court, enjoining appellee from certain activities proscribed by the public accommodations provisions of the Civil Rights Act of 1964.[1]

The complaint alleged that appellee, in the operation of his restaurant at Woodville, Tyler County, Texas, "maintains a dining area in the front portion of the establishment in which only whites are served and maintains a separate dining area in the back of the establishment for the service of Negro patrons". The complaint sought an injunction restraining the proprietor from maintaining dual dining areas for Negro and white patrons.

A pre-trial conference was held at which the parties made several concessions to each other. It was agreed that the Tall Pine Inn Restaurant was an establishment principally engaged in selling food for consumption on the premises; that it serves and offers to serve interstate travelers; that a substantial portion of the food and other products sold by the establishment had moved in interstate commerce from outside the State of Texas to within that state, that the Tall Pine Inn Restaurant is a place

---

1. Title II, Civil Rights Act of 1964, 42 U.S.C. Sec. 2000a–6(a).

of public accommodation which affects commerce within the meaning of Title II. It was further agreed that the appellee had previously engaged in a policy or practice of refusing to provide food and service to Negroes on the same basis that food and service were provided to white members of the general public, and that he had maintained separate dining areas for Negroes and white persons. In a word, both coverage under the Act and a prior pattern of violation were stipulated.

Appellee was also agreeable to injunctive provisions requiring future compliance with the Act by affording to all persons "without discrimination or segregation on the ground of race, color, religion, or national origin" enjoyment of all the goods, services and facilities of the establishment. Appellee, however, refused to agree to certain stipulations of the government contained in the government's "Proposed Consent Decree", that is that appellee be ordered to close a separate dining room used only by Negro patrons on a freedom-of-choice basis and to seat and serve *all* patrons in the main dining room, using the spare dining room only after the main dining room is filled, and to post signs in, and on the exterior door of the Negro dining room to this effect.

The district judge agreed with appellee that the additional relief sought by the government was not necessary or required by the Civil Rights Act, denied a hearing on the merits, and consequently entered no findings of fact or conclusions of law. In denying the additional affirmative relief sought by the government, that is, sequential seating and signs calling attention thereto, the district judge said:

"* * * the Court feels that the law does not go to this extent in requiring a man, or specifying how a man or the person shall use their property if he is not violating any provisions of the Civil Rights Act, and is operating on a nondiscriminatory basis * * * I don't believe that the law would be so high handed as to tell a man whether he should use the front portion of his building before he uses the back portion * * *"

The decree, however, does order appellee to maintain signs on the exterior of the rear door of the Negro dining room and in a prominent place within that dining room, which are to read:

"This establishment is a public accommodation within the meaning of the Civil Rights Act of 1964. All of its facilities are open to all persons on an equal basis, and all persons are welcome and entitled to service in the front dining area without regard to their race, color, religion or national origin."

The government argues that the additional relief sought is necessary to overcome the effects of past discrimination and was prepared to show on trial evidence of appellee's bad faith to avoid discrimination, to-wit: Despite an agreement in 1966 between the government and appellee whereby appellee consented to pursue a "free-choice" policy, Negroes who requested service in the main dining area were still sent to the Negro dining room; employees were instructed not to serve Negroes in the front room; one employee was instructed by appellee to lie to FBI agents investigating complaints of discrimination.

Did the district judge err in entering a "consent" judgment granting an injunction which did not conform with all of the relief sought by appellant, without affording appellant a hearing to present evidence supporting the need for such additional relief? We agree with the appellant that this was error, and reverse.

The appellant argues, and correctly so, that under F.R.Civ.P. 52(a), a district court is required to make findings of fact and conclusions of law. The Rule expressly includes injunctions in its requirements. Implicit in this Rule is the necessity of a hearing of the factual issues. F.R.Civ.P. 65, regulating procedure on applications for injunctive relief, also contemplates a trial on the merits.

Both the Second and Tenth Circuits have held in cases cited by the government that where there is no agreement by the parties there can be no "consent" judgment, Sawyer v. Mid-Continent Petroleum Corporation, 10 Cir. 1956, 236 F.2d 518; Artvale, Inc. v. Rugby Fabrics Corp., 2 Cir. 1962, 303 F.2d 283, and the Court is powerless to expand or contract that agreement, *Artvale,* supra. Not cited by the appellant is the Supreme Court decision in United States v. Ward Baking Co., 376 U.S. 327, 84 S.Ct. 763, 11 L.Ed.2d 743 (1964), a civil antitrust action, which is controlling on this issue. In *Ward,* as here, there was no trial, and there was opposition by the government to the proposed "consent" judgment on the grounds that the evidence that could be produced at trial would justify the requested enlargement of the injunction issued by the district court. The "consent" judgment proposed by the defendant bakery companies, which the district judge [2] entered, generally enjoined the companies from conspiring to submit rigged bids for supplying bakery products *to the United States.* The government opposed entry of the judgment, alleging that the injunction should contain prohibitions against price fixing in sales also *to parties other than the United States.* Although the complaint was limited to sales to the U.S. Naval installations in the Jacksonville, Florida, area, the prayer of the complaint included a request for "such further, general, and different relief as the nature of the case may require and the Court may deem appropriate in the premises". The Supreme Court regarded this language as broad enough to cover the disputed provisions. (The record before the district court moreover showed that defendants had been indicted previously for the same acts charged in the civil action and that four of the five defendants had also been indicted on charges of conspiracy to fix prices on *non-governmental sales,* and all defendants had entered pleas of nolo contendere resulting in fines.) The Court found (p. 766) that "the additional relief sought by the Government had a reasonable basis under the circumstances and that, consequently, the district Court erred in entering the 'consent' judgment without the Government's actual consent". The Court concluded (p. 768) that "there was a bonà fide disagreement concerning substantive items of relief which could be resolved only by trial" and in vacating and remanding for trial said, "We decide only that where the Government seeks an item of relief to which evidence adduced at trial may show that it is entitled, the District Court may not enter a 'consent' judgment without the actual consent of the Government".

The complaint in the instant case contains a prayer similar to that in *Ward*: it seeks "such additional relief as the interest of justice may require". Inasmuch as the government did not consent to the decree, this Court must decide whether the evidence which the government seeks to introduce at trial (actual violation by appellees of the Civil Rights Act in refusing Negroes service in the main dining room, instructing its employees to refuse such service and to lie to FBI agents) provides a reasonable basis for remanding the case for a trial. We think remand is required. This does not necessarily mean that the United States will or should prevail. Inasmuch as there has been no trial below and there are consequently no findings of fact and conclusions of law for us to review, we express no views as to the merits of the case. We' hold simply, under the teaching of *Ward,* supra, that the government must be afforded an opportunity to prove, and the appellee afforded an opportunity to disprove, that the additional relief sought is warranted.

In a recent decision by this Court concerning desegregating cafeteria facilities under the public accommodations section of the Civil Rights Act, United

2. The writer of this opinion.

States v. Richberg, 5 Cir. 1968, 398 F.2d 523, 530, 531, we said:

"'It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform * * *.' United States v. Oregon State Medical Soc., 1951, 343 U.S. 326, 333, 72 S.Ct. 690, 696, 96 L.Ed. 978 * * *. This court must look to the future as well as to the past. We must insure that wrongs are not repeated, and that there is fealty to the law. In considering the necessity for injunctive relief, we bear in mind that '[t]he purpose of an injunction is to prevent future violations'. United States v. W. T. Grant Co., supra, 345 U.S. [629] at 633, 73 S.Ct. at 898, 97 L.Ed. 1303. * * * *"

The district judge after a trial on the merits may still conclude that the prohibitions in the injunction are adequate to prevent future violations. He was of the opinion that the law does not go to the extent of specifying how a man shall use his property as long as he is not violating the Civil Rights Act. This Circuit has not so declared,[3] nor is there any such precedent by the Supreme Court. Nevertheless, such stringent requirements are not foreign to the law. We are referred by appellant to several district court decisions requiring exactly that—sequential seating by closing one dining room: United States v. Bradshaw, 12 R.R.L.R. 1022 (E.D.N.C. 1967); United States v. Dennis, 12 R.R.L.R. 1024 (E.D.N.C.1967); United States v. Worrels, C.A. No. 1015 (E.D. N.C. August 21, 1967). The facts here, if developed, may or may not warrant similar relief.

The judgment appealed from is reversed with directions to the district court upon remand to afford a full evidentiary hearing and based thereon to make appropriate findings of fact and conclusions of law with respect to the further relief sought by the appellant.

Reversed with directions.

MITCHELL, District Judge (concurring in part and dissenting in part):

Initially, it should be noted that counsel for the Government and the defend-

---

3. In connection with Title VII of the Civil Rights Act of 1964, P.L. No. 88–352, 79 Stat. 241, 42 U.S.C. Secs. 2000e to 2000e–15, we have recently required that employers and labor unions take positive action to insure equality of employment opportunity and seniority rights by eradicating the effects of former racially discriminatory practices. See Local 53 of the International Ass'n, etc. v. Paul Vogler, Jr. et al., 5 Cir. 1969, 407 F.2d 1047; Local 189, United Papermakers and Paperworkers, AFL-CIO, CLC, et al. v. United States of America, by John Mitchell, Attorney General, 5 Cir. 1969, 416 F.2d 980 [July 28, 1969].

In order to provide meaningful relief in school desegregration cases we have not hesitated to innovate by requiring positive steps to remove the vestiges of dual systems of schools. Recent instances include Jefferson I and II [United States v. Jefferson County Board of Education, et al., 5 Cir. 1966, 372 F.2d 836, affirmed rehearing en banc 380 F.2d 385, cert. denied sub nom. Caddo Parish School Board v. United States (1967), 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103]; Plaquemines Parish School Board, et al. v. United States, 5 Cir. 1969, 415 F.2d 817 [August 16, 1969]; United States by Mitchell, Attorney General, etc. et al. v. Choctaw County Board of Education et al., 5 Cir. 1969, 417 F.2d 838 [June 26, 1969]; United States v. Jefferson County Board of Education et al., 5 Cir. 1969, 417 F.2d 834 [June 26, 1969]; Davis v. Board of School Commissioners of Mobile County, 5 Cir. 1969, 414 F.2d 69 [June 3, 1969]; Hall v. St. Helena Parish School Board, 5 Cir. 1969, 417 F.2d 801 [May 28, 1969]; Anthony v. Marshall County Board of Education, 5 Cir. 1969, 409 F.2d 1287 [April 15, 1969]; United States v. Indianola Municipal Separate School District, 5 Cir. 1969, 410 F.2d 626 [April 11, 1969]; Henry v. Clarksdale Municipal Separate School District, 5 Cir. 1969, 409 F.2d 682; United States v. Greenwood Municipal Separate School District, 5 Cir. 1969, 406 F.2d 1086; Adams v. Mathews, 5 Cir. 1968, 403 F.2d 181; Graves v. Walton County Board of Education, 5 Cir. 1968, 403 F.2d 181, 189; Board of Public Instruction of Duval County, Fla. v. Braxton, 5 Cir. 1968, 402 F.2d 900.

ant had worked out a tentative settlement of this matter; had formally appeared before the Court for the purpose of entering a consent decree; and the Court was fully apprised of every facet of the case, including those facts allegedly sustaining controversial items D, E, F and G.[1]

Even though no formal evidentiary hearing was conducted, it is patent from the colloquy between counsel and the Court in a formal court session that, in effect, even without an evidentiary hear-

ing the Court was in possession of all facts necessary to finally dispose of the case; and that it had fully taken into consideration, and assumed that the Government could prove, the facts on which it relied to support the controversial sections of the proposed decree; and had rejected them out of hand.

Any other evidence adduced would have been irrelevant and immaterial inasmuch as the relief sought by the Government in the controversial sections is clearly not sanctioned by the provisions

---

1. Page 40, *et seq.*, of the record (emphasis added):

"THE COURT: My understanding is that the Court is entering a judgment in the matter. I don't see any necessity of any further hearing if the parties stipulate, and I presume they have, to enter the judgment. It's a question of whether or not the judgment should provide the objectionable provisions which the defendant objects to and which the Government insists upon.

"MR. HILL: Basically, there is a difference—I would just say an order not encompassing or comprising those provisions being entered, the Government would like an opportunity to present its evidence.

"THE COURT: Present its evidence of what, Mr. Hill?

"MR. HILL: Of the past conduct of the defendant, Your Honor.

"THE COURT: *What could you accomplish if you presented the evidence if the defendant is willing to agree to the judgment,* with the exception of certain directives in the judgment?

"MR. HILL: Well, Your Honor, I think our differences as to those two provisions are the essence, Your Honor. In other words, if there is no agreement between the parties as to those two provisions, then we haven't really reached a consent order between the parties.

"THE COURT: As the Court understands, there is disagreement between Items D, E, F and G, but *there is no disagreement toward the judgment requiring the defendants (sic) to operate his restaurant on a non-discriminatory basis as to races and to integrate his restaurant.*

"Now, what could you accomplish by a hearing?

"MR. HILL: Well, as of yet, as I understand it, no record is really in

the case; no proof of the nature and quality of the acts of the defendants heretofore.

"THE COURT: *What would you accomplish by that type proof?*

"MR. HILL: Well, it is our contention that the nature of those acts is what really calls for the inclusion of these two provisions in the order, Your Honor.

"THE COURT: Well, the Court is going to enter a judgment and require the defendant, at least, to sign the judgment. If the Government wishes to approve it they can; if they don't why then, they can do whatever they want to with it. But, *I've got entirely too many cases to try to just try something to appease the fancy of an attorney or someone who wants a hearing without any necessity for a hearing.*

"All right. The Court is going to enter the judgment as prepared, with the deletion of Sections D, E, F and G. The reason for this is that the *Court feels that the law does not go to this extent in requiring a man or specifying how a man or the person shall use their property, if he is not violating any provisions of the Civil Rights Act and is operating it on a non-discriminatory basis—not discriminating against anyone who would use the restaurant —on the basis of race, color, religion or national origin or economical basis, or basis of financial wealth, or sex. I don't believe that the law would be so high handed as to tell a man whether he should use the front portion of his building before he uses the back portion; neither do I think that it requires him to post any signs as to how he shall use the building, provided that he is not discriminating against anyone because of race, or sex, or religion, or any other.* That will be the decision of the Court."

of the Civil Rights Act. Accordingly, such a hearing would have been, and would be, an exercise in futility. I am in total agreement with the Court's statement that:

> "* * * the Court feels that *the law does not go to this extent* in requiring a man, or specifying how a man or the person shall use their property, if he is not violating any provisions of the Civil Rights Act, and is operating it on a non-discriminatory basis—not discriminating against anyone who would use the restaurant —on the basis of race, color, religion or national origin, or economical basis, or basis of financial wealth, or sex." [2]

Indeed, to go further would be to engage in judicial legislation.

The essence of the lower court's opinion is found in the remark:

> "I've got entirely too many cases to try to just try something *to appease the fancy of an attorney* * * * who wants a hearing without any necessity for a hearing." [3]

My brothers rely on Ward [4] where there was opposition, in a civil anti-trust action, to the proposed "consent" judgment on the grounds that the evidence that could be produced at trial would justify the requested enlargement of the injunction issued by the district court. The judgment generally enjoined the companies from conspiring to submit rigged bids for supplying bakery products *to the United States* and the Government opposed its entry, alleging that the injunction should also contain prohibitions against price fixing in sales to parties *other than the United States.* Since the prayer of the complaint included a request for "such further, general, and different relief as the nature of the case may require and the Court may deem appropriate in the premises", the Supreme Court regarded it as broad enough to cover the disputed provisions

and, consequently, found (84 S.Ct., at p. 766) that "the additional relief sought by the Government had a reasonable basis under the circumstances and that, consequently, the District Court erred in entering the 'consent' judgment without the Government's actual consent;" that (84 S.Ct., at p. 768) "there was a bona fide disagreement concerning substantive items of relief which could be resolved only by trial" and that "We decide only that where the Government seeks an item of relief to which evidence adduced at trial may show that it is entitled, the District Court may not enter a 'consent' judgment without the actual consent of the Government."

Agreed that in Ward additional items of relief were sought and thus it should have been reopened, the facts herein are clearly distinguishable. Here, plaintiff is entitled to a decree which will absolutely require that a restaurant operate on a non-discriminatory basis and not violate any provisions of the Civil Rights Act—not discriminate, against anyone who would use it, on the basis of race, color, religion, national origin, economic basis, financial wealth, or sex. Plaintiff attained this objection! To paraphrase the words of the learned district judge, neither federal courts nor the law would be so high handed as to tell a man whether he should use the front portion of his building before he uses the back portion; neither does it require him to post any signs as to how he shall use the building provided that he is not discriminating against anyone because of race, sex, religion or any other. Thus, unlike Ward, plaintiff has, in the court's decree, received everything which the Act possibly could legitimately encompass unless, of course, it hopes to get the Court to legislate into the Act that which Congress did not see fit to include therein.

Accordingly, I have no quarrel with the correctness of Ward when applied to

---

2. P. 43, Record (emphasis added).

3. P. 44, Record.

4. United States v. Ward Baking Co., 376 U.S. 327, 84 S.Ct. 763, 11 L.Ed.2d 743 (1964).

its, or a similar, factual situation. However, the district court's decree herein proscribes all persons whomsoever, and howsoever even remotely connected with defendant, be they employees, agents or otherwise, from violating any right whatsoever afforded to any person under the Civil Rights Act of 1964. There is no further relief that a Court can legally grant!

The District Court ordered full compliance with all provisions of the Civil Rights Act; ordered everything that it constitutionally could to provide the relief sought by the Government; indeed, it is to be complimented for its restraint in refusing to indulge in judicial legislation; and it correctly refused to conduct a needless hearing merely to appease the fancy of an attorney who wanted a hearing without any necessity therefor. Accordingly, I must respectfully dissent from that portion of the majority opinion requiring a hearing to take testimony on the provisions of Items D, E, F and G of the proposed consent.

Notwithstanding having obtained a decree encompassing total relief from discrimination, plaintiff appealed on the technicality that the Court had failed to comply with Rule 52(a) of the Federal Rules of Civil Procedure, which requires the district court to make findings of fact and conclusions of law. I cannot but agree with my brothers that this technical objection is valid. But to what end? Since the Court's decree encompasses everything that the Civil Rights Act envisioned; and its remarks made it crystal clear that it will tolerate no violation of its decree; it logically follows that, taking those remarks and the decree in totality, they could be interpreted to meet the requirements, albeit informal, of findings of fact and conclusions of law. However, since, they technically do not comply with, or meet the formal requirements of, Rule 52(a), I reluctantly concur in the result reached by the majority of the Court.