*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0051P (6th Cir.)
File Name: 02a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ARMCO, INC.,
      *Plaintiff-Appellee,*

    *v.*

UNITED STEELWORKERS OF
AMERICA, AFL-CIO, LOCAL
169, UNITED STEELWORKERS
OF AMERICA, AFL-CIO,
BILLY D. COLLINS, DAN
MARTIN, and MARK E.
ROBERTSON,
      *Defendants-Appellants,*

    *v.*

CITY OF MANSFIELD, LYDIA
REID, and JOHN FULLER,
      *Defendants-Appellees.*

Nos. 00-3609/
3610/3611

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-01803—John M. Manos, District Judge.

Argued: September 11, 2001

Decided and Filed: February 7, 2002

Before:  DAUGHTREY and GILMAN, Circuit Judges;
        COHN, Senior District Judge.[*]

_____

**COUNSEL**

**ARGUED:**    Philip Hostak, BREDHOFF & KAISER, Washington, D.C., for Appellants.  George E. Yund, FROST BROWN TODD LLC, Cincinnati, Ohio, Maura L. Hughes, CALFEE, HALTER & GRISWOLD LLP, Cleveland, Ohio, for Appellees.  **ON BRIEF:**  Mark A. Rock, Timothy J. Gallagher, SCHWARZWALD, ROCK & MCNAIR, Cleveland, Ohio, Robert Weinberg, BREDHOFF & KAISER, Washington, D.C., for Appellants.  George E. Yund, David C. Horn, FROST BROWN TODD, LLC, Cincinnati, Ohio, Richard P. Goddard, Wendy E. Stark, CALFEE, HALTER & GRISWOLD LLP, Cleveland, Ohio, Robert L. Konstam, CITY OF MANSFIELD LAW DIRECTOR, Mansfield, Ohio, for Appellees.

_____

**OPINION**
_____

## I. INTRODUCTION

   COHN, Senior District Judge.  This case arises out of a labor dispute at the Mansfield, Ohio facility of Armco, Inc., a steel manufacturer.  In July 1999, Armco filed an action in state court[1] claiming that the defendants-appellants, United

_____

[*] The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] *Armco, Inc. v. United Steelworkers of America, AFL-CIO-CLC, et al.*, No. 99-484-H (Common Pleas Ct. of Richland County, Ohio July, 1999).

Steelworkers of America, AFL-CIO; Local 169, United Steelworkers of America AFL-CIO; Billy D. Collins; Dan Martin; and Mark E. Robertson, (collectively "the Unions") breached the terms of a collective bargaining agreement (CBA) in violation of the Labor Management Relations Act (LMRA), 29 U.S.C. § 301. The Unions removed the case to federal court.

Armco later amended its complaint to add claims under 42 U.S.C. § 1983, claiming that the Unions and the City of Mansfield, Mayor Lydia Reid, and Mansfield police officer John Fuller (collectively "the City") conspired to shut down Armco's Mansfield facility, in violation of Armco's constitutional rights. Armco and the City reached a settlement of their dispute and asked the district court to approve what they labeled a "consent decree." Over objection of the Unions, and without conducting an evidentiary hearing, the district court signed the consent decree and at the same time signed a certificate of appealability as well as a Memorandum of Opinion for the purpose of "stating its reasons for signing the Consent Decree." *See infra*.

The Unions now challenge the consent decree, arguing that: (1) the Norris-LaGuardia Act, 29 U.S.C. § 101, deprived the district court of jurisdiction to enter the consent decree in the absence of an evidentiary hearing; (2) the consent decree violates the *Younger v. Harris*, 401 U.S. 37 (1971), abstention doctrine because a state court injunction covering the same activity as described in the consent decree has been entered by the Common Pleas Court of Richland County, Ohio in a separately filed case[2]; (3) the provisions of the consent decree violate fundamental equity and due process principles and the Union's First Amendment rights; and (4) the district court lacked authority to direct the United States Marshals to enforce the consent decree. Armco argues that the Court of

---

[2]*Armco, Inc. v. United Steelworkers of America, et al.*, No. 99-640-H (Common Pleas Ct. of Richland Count, Ohio Sept. 28, 1999).

Appeals lacks jurisdiction over the consent decree as will be discussed below.

For the following reasons, we conclude that we have jurisdiction over the consent decree under 28 U.S.C. § 1292(a)(1) because it is an injunction. We also conclude that Norris-LaGuardia Act divested the district court of jurisdiction to enter the consent decree. Further, we conclude that the district court violated the *Younger* abstention doctrine. Accordingly, the consent decree must be vacated and the case remanded to the district court to determine whether to bifurcate the claims for damages against the Unions under the § 1983 claim.

## II.  BACKGROUND

### A.  Factual and Procedural Background

The district court's Memorandum of Opinion summarizes the factual and procedural background of this case as follows:

### A.  *Factual Background*

Plaintiff Armco, Inc. manufactures specialty and stainless steel at a plant in Mansfield, Ohio. The Plaintiff employed approximately 500 hourly and 150 salaried employees at the Mansfield plant. The hourly employees are represented by a union, a local branch (Local 169) of the United Steelworkers of America (collectively the "Union"). Both the International Union and Local 169 are Defendants.

The plant operated pursuant to a collective bargaining agreement ("CBA") between the Union and the Plaintiff. The CBA expired at 12:01 a.m. on September 1, 1999. Immediately upon expiration, the Plaintiff locked out the Union employees. The Plaintiff alleges that, even before the expiration of the CBA, Union members committed acts of sabotage resulting in lost production time. In addition, Union members refused to work overtime, also

over the entry of the consent decree under 28 U.S.C. § 1292(a)(1).

We find that the consent decree operates as an injunction in a case arising out of a labor dispute and, therefore, the Norris-LaGuardia Act applies. Because the district court failed to hold an evidentiary hearing and make findings of fact, it was divested of jurisdiction to enter the consent decree.

Further, the district court violated the *Younger* abstention doctrine by entry of the consent decree. Specifically, the consent decree interfered with an ongoing state court proceeding by addressing issues already dealt with in a state court injunction and implicating important state interests.

Accordingly, the order granting the consent decree is VACATED and the case is REMANDED to the district court for further proceedings consistent with the limitations stated in this opinion. On remand, the district court should decide whether it should go forward with the damages prong of the § 1983 claim.[6]

---

[6] Both Armco and the Unions have filed motions to strike papers filed by the opposite party *aliunde* the record. The motions are DENIED. We are satisfied that our decision is consistent with the record on appeal from the district court. We are also satisfied that on remand the district court will confine itself to the record made by the parties in the case and will recognize that the difficulties resolved by this appeal came about by its failure to appreciate the four party dispute reflected in the case.

*U. S. v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977). *See also Bercheny v. Johnson*, 633 F.2d 473, 476-77 (6th Cir. 1980) (applying the standards articulated in *Robin*).

The Unions claim that the district court judge will be unable to view the case objectively upon remand, as evidenced by the magnitude of errors and the level of his "personal investment" in the case. With respect to "personal investment," the Unions cite docket entries suggesting that the district judge had *ex parte* contact with Armco and the City. The Unions also offer a newspaper article that quotes the Mayor of Mansfield as saying that the district judge gave the city "no choice but to enter into the agreement," and that "whenever the city refused to concede some point–like having police search and remove shanties near the gates – [the district judge] countered by saying he would have the Marshals do it. . . . it was all [the district judge] . . . You think we asked the marshals to come to our town? I don't think so." The Unions also argue that the district judge conducted off-the-record *ex parte* meetings and that the case should be reassigned to a different judge to maintain the appearance of justice. Finally, the Unions argue that reassignment would not entail waste or duplication out of proportion with what would be gained by preserving the appearance of fairness, because no evidence was taken, no findings of fact were made by the district judge, and no trial date had been set.

In our view, this single newspaper article and one party's allegation that a judge conducted off-the-record *ex parte* meetings are not sufficient to justify the extraordinary relief requested. We, therefore, decline to remand this case to a different district court judge under 28 U.S.C. § 2106.

## IV. CONCLUSION

Because the consent decree operates as an injunction and because the Unions will be seriously harmed if they cannot challenge the consent decree at this time, we have jurisdiction

resulting in lost production time, as well as plant shutdowns on at least three occasions in June and July 1999. The Union Defendants deny they violated the CBA.

In anticipation of potential violence, the Plaintiff hired security guards before the CBA expired. The Union alleges that before the lockout, security guards harassed Union employees, and sexually harassed some female employees. It contends that the presence of the security guards created an unsafe and unhealthy work environment in violation of the CBA. The Plaintiff denies the allegations.

Since the lockout began, the Plaintiff has continued to maintain the security force to protect the plant, salaried employees, and replacement workers. However, there have been instances of violence. (*See County Security Agency v. City of Mansfiled*, Case No. 1:99CV2507, Court's Memorandum of Opinion date [sic] January 14, 2000.)

On September 3, 1999, the Plaintiff filed [a lawsuit in state court seeking injunctive relief against the Union Defendants.] It sought to limit the pickets and to enjoin violence. Judge James D. Henson issued [a temporary restraining order] the same day.

The Plaintiff alleges, however, that Labor Day weekend [on September 5 and 6, 1999], Union and Mansfield officials, including Mayor Reid, met with Judge Henson about the labor dispute without the presence of any representatives of the Plaintiff. The Plaintiff alleges further that the Defendants asserted improper influence over Judge Henson at that meeting. The Defendants have admitted to the meeting, but deny any impropriety.

On Labor Day, September 6, 1999, upon motion of the Union, Judge Henson issued a TRO enjoining the Plaintiff from using replacement workers [and granting

the president of Local 169 or his designee and the Mansfield police the right to inspect vehicles entering or leaving the Armco facility to verify compliance with the TRO.] The Plaintiff objected on the next day, asserting its absolute right to use replacement workers under federal law. It claimed it needed replacements to continue operating its plant. Judge Henson rejected the Plaintiff's objections [but amended the TRO to permit vehicle searches only by the Mansfield police, and not by Union members.] Because of the TRO, the Plaintiff's plant was shutdown [sic] from September 7-9, 1999. On September 9, 1999, the Plaintiff submitted an additional brief, and Judge Henson rescinded the TRO barring replacement workers. The original TRO, prohibiting violence and limiting the pickets, remained in force.

On September 10, 1999, the Plaintiff attempted to bring replacement workers into the plant in a convoy of vehicles. At the plant entrance, the convoy was attacked by an angry mob, which threw objects, smashed windows of the vehicles, and beat replacement workers and security guards, severely injuring some. Defendant John Fuller, a Mansfield police officer, was at the entrance to the plant. The Plaintiff alleges that Officer Fuller, with the approval of City officials, assisted the Union to block the entrance and prevent the replacement workers from entering. Also, he did nothing as Union members and their supporters attacked the convoy when it could not enter the plant.

[On September 28, 1999, the state court entered an agreed preliminary injunction which governed in detail the conduct of Armco and the Union in connection with the labor dispute. On April 20, 2000, a newly assigned state court judge amended the preliminary injunction to require Armco and the Union to monitor the conduct of their employees and members, and granted the City leave to intervene in the state court action as an additional plaintiff. That injunction remains in effect.]

Unions' remaining challenges to the validity of the consent decree.

### E. Mandamus Petition and Other Relief

The Unions have also filed a petition for writ of mandamus directing the district court to vacate the approval and entry of the consent decree. *See* All Writs Act, 28 U.S.C. § 1651. Armco, the City and the district court have each responded.

"Mandamus is an extraordinary remedy, and it will only be granted when the petitioner shows that its right to issuance of the writ is 'clear and indisputable.' '[O]nly exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy.'" *In re Bendectin Products Liability Litigation*, 749 F.2d 300, 303 (6th Cir. 1984) (citations and footnotes omitted). We find that there is no basis on which to grant the writ.

The Unions also ask us to exercise our authority under 28 U.S.C. § 2106 to remand the case to a different district court judge. "However, this is an extraordinary power and should rarely be invoked. . . . Such reassignments should be made infrequently and with the greatest reluctance." *U.S. v. Winters*, 174 F.3d 478, 487 (5th Cir. 1999) (quotation and citations omitted).

Absent proof of personal bias requiring recusation, Title 28 U.S.C. § 144, the principal factors considered by us in determining whether further proceedings should be conducted before a different judge are (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

the district court continuing jurisdiction to "make and enforce such other orders respecting conduct by private persons related to the labor dispute as the Court deems appropriate to ensure the maintenance of public order." Similarly, the state court retains jurisdiction under its injunction to maintain public order over the labor dispute. As the Unions point out, because of this duplication, a person may be sanctioned by both the state and federal courts for exactly the same conduct.

Clearly, the consent decree interferes with a pending state court proceeding and the first prong of the *Younger* test is satisfied.

The state has important interests in preserving the public peace and in enforcing the orders and judgments of its courts. Accordingly, the second prong of the *Younger* test is satisfied.

The City argues that "the state proceedings do not afford the Plaintiff an adequate opportunity to raise its § 1983 claim against the City Defendants;" and, therefore, the third prong of the *Younger* test is not satisfied. Neither the City nor Armco offer any support for this argument. The federal plaintiff has the burden to show that "that state procedural law barred presentation of [its] claims." *Federal Express Corp. v. Tennessee Public Serv. Comm'n*, 925 F.2d 962, 970 (6th Cir. 1991) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987)). Armco has not met this burden.

Abstention by the district court would have "avoided duplication of legal proceedings [and sanctions], deferred to the state's sovereignty over its law, and respected the principles of comity inherent to our federalism." *Carroll*, 139 F.3d at 1075. Accordingly, the district court's entry of the consent decree violated the *Younger* abstention doctrine. *See Carroll*, 139 F.3d at 1074.

Because we have found that the district court lacked jurisdiction to issue the consent decree under the Norris-LaGuardia Act and entered the consent decree in violation of the *Younger* abstention doctrine, we need not address the

## B.  *Procedural History*

[In July] 1999, before the CBA expired, the Plaintiff filed its original Complaint against the International Union, Local 169, and several Union officials (the "Union Defendants"). [On July 28, the defendants removed the case to the district court.]  The Plaintiff essentially alleges that the Union Defendants violated the CBA by engaging in a concerted refusal to work overtime. The Union Defendants deny the charges, and assert a counterclaim alleging that the presence of the security force violated the CBA by creating an unsafe and unhealthy work environment.

On November 19, 1999, pursuant to leave of [the district court], the Plaintiff filed its Amended Complaint. It added as Defendants the City of Mansfield, Mayor Reid, and Officer Fuller (the "Mansfield Defendants"). Count I relates only to the Union Defendants, and essentially re-asserts the allegations of the original Complaint. The Plaintiff additionally alleges that Union members committed acts of sabotage resulting in lost production. The Union Defendants have re-asserted their counterclaim based on the presence of the security force.

Counts II-IV, which are the subject of the Consent Decree, are based on events occurring after the CBA expired. Specifically, Counts II-IV arise under 42 U.S.C. § 1983 and essentially allege that the Mansfield Defendants and the Union Defendants conspired to shutdown [sic] the plant, thereby abridging the Plaintiff's constitutional rights under color of state law. Count V alleges a similar conspiracy to tortiously interfere with the contractual rights of the Plaintiff and its customers. The factual basis for these counts is two-fold. First, the Plaintiff alleges that the Defendants conspired to assert improper influence over Judge Henson, causing the plant to shut down for three days resulting in significant lost production time. Second, the Plaintiff alleges that on

September 10, 1999, the Mansfield Defendants, acting through Officer Fuller, conspired with the Union to block entrance to the plant and cause violence. This again resulted in lost production time, and additionally caused property damages to the plant and personal injuries to replacement workers and security guards.

At various conferences with the parties, the [district court] raised the issue of settlement. It became clear that the Union Defendants and the Plaintiff were not yet prepared to do so, but the Mansfield Defendants expressed interest in a separate settlement on Counts II-IV, including the section 1983 claims.

During the settlement negotiations, the Plaintiff expressed concerns, as first raised in the Amended Complaint, that Mansfield was not performing adequately in protecting the Plaintiff's constitutional property right to operate its plant. The City continued to assert there was no conspiracy or intent to deprive the Plaintiff of its constitutional rights, but represented that it simply did not have sufficient resources to maintain order. As part of the agreement, therefore, the parties requested that the [district court] issue a Consent Decree to define the City's obligations to prevent violence, and provide that the U.S. Marshals would monitor compliance with the Decree and, when and if necessary, supplement the City's resources to maintain law and order.

On March 22, 2000, the Plaintiff and the Mansfield Defendants proposed a Consent Decree designed to ensure access to and from the Plaintiff's Mansfield facilities, and to prevent violence. The [district court] reviewed the proposal and suggested certain changes to the language. On March 23, the parties submitted a proposed Consent Decree incorporating those changes. The [district court] also instructed the parties to serve a copy of the Consent Decree on the Union Defendants.

their employees and members, and granted the City leave to intervene in the state court action as an additional plaintiff. This state court injunction continues in effect.

The Unions argue that the consent decree covers the same conduct that is covered by the state court injunction. Therefore, the Unions argue, the first prong of the *Younger* test is satisfied. Armco and the City argue in response that the consent decree does not interfere with the state court proceeding because it does not interfere with, interpret, or enforce the state court injunction. They characterize the consent decree as distinct from and supplemental to the state court injunction. Armco and the City also argue that the §1983 claim in the federal court action and the consent decree are independent of the claims in the pending state court case.

Although the consent decree does not specifically enjoin the state court proceeding, it addresses substantially the same issues that are addressed in the state court injunction. Further, contrary to Armco and the City's argument that the § 1983 claim in the federal lawsuit is independent of the state action, the relief requested by Armco is directly covered by the state court injunction. Armco's federal complaint states: "Unless immediately and permanently enjoined, Defendants will continue to engage in such intentional, purposeful, reckless, malicious, and wanton conduct in callous disregard of or with deliberate indifference to Armco's rights." The state court injunction enjoins the Unions from committing violent acts, limits the picketing, and requires the Mansfield police to enforce the picketing restrictions, protect persons and property, and generally keep the peace. The state court injunction also prohibits threats and violence and establishes a 750-foot no-walk zone in front of the entrances to Armco's Mansfield plant. Further, the state court injunction mandates that the Unions may not obstruct the roadway with shacks.

Finally, the consent decree and the state court injunction both purport to give the issuing courts ongoing jurisdiction over the labor dispute. The consent decree specifically gives

The injunction in *Reuter* was consistent with the purpose of the Act: to protect workers in exercising their organizing powers. In contrast, the consent decree is directly in conflict with Act's purpose because it restricts the Unions' members conduct in connection with the labor dispute at the Armco Mansfield plant.

Because the restrictions of the consent decree strongly impact the Unions' ability to exercise their economic power in the underlying labor dispute at the Armco Mansfield plant, the district court did not have jurisdiction to enter the consent decree without first conducting an evidentiary hearing.

### D. *Younger* Abstention Doctrine

The Unions argue next that the consent decree violates the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971), which requires a district court to abstain from matters in which a "state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998).

As we noted above, in a separate state action the Richland County Court of Common Pleas issued a preliminary injunction which governed in detail the conduct of Armco and the Unions in connection with the labor dispute. For example, the injunction enjoined the Unions from engaging in acts of violence or harassment, limited their picketing to within 750 feet of each entrance to the Armco facility, limited the number of picketers outside of each entrance to four, and enjoined the Unions from obstructing the roadway with shacks. On February 25, 2000, Armco moved the state court to modify the injunction by placing further limits on the picketers, the scope of their picketing, and the location of their picket-related structures. On April 20, 2000, a newly assigned state court judge modified the preliminary injunction to require Armco and the Unions to monitor the conduct of

After receiving a copy, the Union Defendants requested an opportunity to submit objections, which they did on March 24. With their objections, they requested an evidentiary hearing, which the [district court] denied.

On March 28, 2000, the Plaintiff responded to the Union Defendants' objections, to which the Union Defendants replied on March 31. On May 15, 2000, the [district court] issued the Consent Decree.

Memorandum of Opinion, No. 1:99 CV 1803 at 2-7 (N.D. Ohio May 15, 2000) (footnotes and citations to amended complaint omitted).

### B. The Consent Decree and Memorandum of Opinion

The relevant provisions of the consent decree are as follows:

1. The term of this Decree shall be the duration of the above-reference labor dispute ("the labor dispute").

2. This Decree shall be binding on the City of Mansfield, [Armco], and all those persons and entities who receive notice of its terms, and all those who act in concert with, who support or who participate with such persons and entities. Any person who violates this Consent Decree shall be subject to contempt proceedings before this Court.

3. There shall be no violence, breach of the peace, commission of crimes, harassment or violations of state, federal or local laws or orders in connection with the labor dispute involving [Armco's] Mansfield operation, including but not limited to acts occurring at or near Company property, the property and residences of Company employees and agents, or any other location.

4. There shall be a no-walk zone the dimensions of which are to be determined by the U.S. Marshal at all

entrances to [Armco's] Mansfield facilities. . . . No one may walk in such no-walk zones while any person or vehicle is attempting to enter or leave [Armco's] facilities. No person other than a law enforcement officer may place any object in a no-walk zone at any time. No person shall in any other way obstruct or interfere with the use of any roadway or entranceway leading to, or any entrance to, any of [Armco's] facilities, at any time so as to impede the flow of traffic or access to or from such facilities. The City shall issue a summons in accordance with applicable law whenever presented with verification of a violation of this provision.

5. Under supervision of the U.S. Marshal, the City Police Division shall search, in accordance with state and federal law, any picket shanty or similar structure on private property erected in connection with the labor dispute, for weapons, destructive or incendiary devices and other contraband any time it is presented with verification that there is reason to believe such structures have been or are being used to store such objects or for any other unlawful purpose.

6. Within forty-eight hours after the issuance of this Order, the City Police Division shall remove or cause the removal of any *enclosed* structure, barricade, or stacks of pallets or building materials unlawfully located on public property or right of way adjacent to [Armco's] Mansfield facilities. No person shall erect or maintain any enclosed structure, barricade, or stack or pallets or building materials on public property or right of way adjacent to [Armco's] Mansfield facilities.

7. The City shall maintain and enforce its "zero-tolerance policy" for commissions of crimes in connection with the labor dispute involving [Armco's] Mansfield operation whereby City police officers will criminally charge persons for violations of criminal laws

The district court, relying on *Reuter v. Skipper*, 4 F.3d 716 (9th Cir. 1993), found that even if the case involved a labor dispute, the Act did not apply to the §1983 claim resolved by the consent decree. In *Reuter*, a county employee claimed that her constitutional rights were violated when she was terminated for violating a work rule prohibiting county correction officers from cohabiting with ex-felons on parole. The *Reuter* court held that the Act "does not preclude the district court from issuing an injunction in a section 1983 action, even though the action involves a labor dispute between an employee and a municipality." *Id.* at 721. The *Reuter* court reasoned that:

> It would be incongruous to read Norris-LaGuardia to preclude equitable relief as a remedy available to the injured party under section 1983 just because the parties are involved in a labor dispute.
>
> . . . .
>
> Norris-LaGuardia was intended to protect workers from federal court injunctions so as to allow them to exercise organized economic power. *See* 29 U.S.C. § 102; *Matter of Crowe & Assocs., Inc.*, 713 F.2d 211, 216 (6th Cir. 1983). If a constitutional right is violated in a labor dispute between a municipal government and its employee, the section 1983 claim will invariably be made by the employee. An injunction issued against the municipality in such circumstances does not interfere with the policy aims of Norris-LaGuardia.

*Id.* at 720-21.

---

from injunctions. *Aeronautical Industrial* does not support Armco's position that the district court had jurisdiction to enter the consent decree in the circumstances of the dispute between Armco and the Unions.

While the district court concluded that the consent decree pertained only to the settlement of Armco's § 1983 claim against the City, we conclude that the claim would not exist but for the underlying strike and the City's claimed conspiracy with the Unions to hamper Armco's use of replacement workers as substitutes for the striking members of the Unions. Further, we note that the consent decree places numerous restrictions upon the Unions' activities in the context of the labor dispute as we have noted above. The consent decree says that it is binding not only the consenting parties, Armco and the City, but also "all those persons and entities who receive notice of its terms." Moreover, its terms have a greater impact on the actions of the Unions than on either Armco or the City. Although the City agrees to take certain law enforcement actions– enforcing a no-walk zone at the entrances to Armco's facilities, searching picket shanties, removing enclosed structures on public property, and maintaining a zero-tolerance attitude towards commissions of crimes in connection with the labor dispute–these actions are directed at the conduct of the members of the Unions.[5]

---

[5] Armco cites *Aeronautical Industrial District Lodge 91 of the International Association of Machinists and Aerospace Workers, AFL-CIO v. United Technologies Corp., Pratt & Whitney*, 230 F.3d 569 (2d Cir. 2000), in support of its argument that the consent decree does not involve a labor dispute. In *Aeronautical*, the Court of Appeals for the Second Circuit concluded that the district court had jurisdiction to enjoin a company from proceeding with its restructuring plans, which included a permanent transfer of production work from Connecticut to Texas, Oklahoma, and Arkansas, in violation of a collective bargaining agreement. The court noted that the injunction promoted the purpose of the Act, which is to protect employees' ability to organize and bargain collectively. The court also explained that the injunction sought to enjoin conduct – the transfer of work – not specifically included in the Act (enumerating "specific acts not subject to restraining orders or injunctions," including strikes, unionizing, picketing, and refusing to remain in an employment relationship). *See id.* at 578 (quoting 29 U.S.C. § 104).

Here, however, the consent decree does not promote, but rather infringes upon, the employees' ability to organize, and it enjoins conduct – striking and picketing – specifically enumerated in the Act as protected

in accordance with applicable local, state and federal laws.

. . . .

9.   U.S. Marshals shall be present at the [Armco] Mansfield facility as needed to monitor compliance with the terms of this Consent Decree.

. . . .

11. The U.S. Marshals, when necessary, shall request the City to invoke mutual aid agreements for obtaining law enforcement assistance from other law enforcement agencies, and such requests will not be unreasonably denied.

. . . .

Consent Decree, No. 1:99 CV 1803 at 3-5.

In its Memorandum of Opinion, the district court explained that "the Consent Decree is limited to necessary measures to prevent violence and ensure access to and from the Plaintiff's Mansfield facilities."

Addressing the Unions' arguments that the district court lacked the authority to enter the consent decree, the district court concluded that the consent decree did not violate the Norris-LaGuardia Act because the § 1983 claims against the City were only incidental to the labor dispute and, therefore, the Act did not apply. The district court also concluded that the entry of the consent decree did not violate the *Younger* abstention doctrine because the §1983 claims against the City were unique to the federal action and the provisions of the state court injunction were less specific than the consent decree. Further, the district court concluded that the consent decree did not violate the Unions' Due Process and First Amendment rights because the Unions were provided an opportunity to be heard regarding their objections to the

consent decree at a conference with the district judge and the consent decree did not limit "lawful" picketing, but rather was designed to "prevent[] violence and impediments on access to and from the Mansfield facilities." *Id*. at 15. Finally, the district court concluded that it did not exceed its authority by invoking the United States Marshals to monitor the compliance of the consent decree because enforcement of the consent decree was incidental to the Marshals' federal duties to enforce settlement of a § 1983 claim.

### C. Actions in This Court

On May 16, 2000, the Unions filed a Notice of Appeal as well as a petition for writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, or, in the alternative, a motion for an expedited appeal. The Unions also filed a motion to stay enforcement of the consent decree pending decision on the mandamus petition or, in the alternative, pending appellate review of the consent decree. We entered an order staying enforcement of the consent decree pending a further order. On June 20, 2000, we entered an order consolidating the petition for writ of mandamus with the appeal.

### III. DISCUSSION

### A. Jurisdiction

The Unions argue that we have jurisdiction to consider the consent decree under 28 U.S.C. § 1292(a)(1) because the consent decree includes an injunction. *See* 28 U.S.C. § 1292(a)(1) (providing appellate jurisdiction over interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions"). Armco argues, in response, that the consent decree does not include an injunction and that we should apply *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 728 F. Supp. 1142 (D. N.J. 1990), and treat the consent decree as a settlement agreement. In *Johnston*, real estate developers brought suit against picketing unions and non-union suppliers who refused

interpreted the scope of the Act as intentionally broad, such that a case "involves a labor dispute" if "the employer-employee relationship [is] the matrix of the controversy." *Columbia River Packers Association, Inc. v. Hinton*, 315 U.S. 143, 147 (1942); *see also Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Association*, 457 U.S. 702, 712-13 (1982).

The consent decree in this case clearly involves or grows out of a labor dispute. The language of the consent decree itself indicates that it pertains directly to the labor dispute at the Armco Mansfield plant:

> In addition to its continuing jurisdiction to enforce the other provisions of this Consent Decree, this Court shall make and enforce such other orders respecting *conduct by private persons related to the labor dispute* as the Court deems appropriate to ensure the maintenance of public order.

Consent Decree, at 4 (emphasis added).

---

associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).
(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.
(c) The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

employment. In addition, the claims do not arise out of a labor dispute because the Mansfield Defendants do not engage in the same trade or industry as the Plaintiff, and are not interested parties in the negotiations of the CBA. Rather, the Plaintiff alleges that the Mansfield Defendants deprived it of its statutory and constitutional property rights to operate its plant. These claims are wholly independent of the labor dispute between the Plaintiff and Union Defendants.

The Unions, in turn, argue that the injunctive provisions of the consent decree relate to the labor dispute at Armco's Mansfield plant. Specifically, the Unions argue that the provisions pertaining to the no-walk zones, mandated searches of picket shanties, and removal of structures on public property are directly related to the labor dispute. Therefore, the Unions say, the Act applies to the consent decree.

The Act defines a labor dispute as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c)[4]. The Supreme Court has

---

[4]The pertinent provisions of 29 U.S.C. § 113 read:
(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or

to deliver construction material. The developers entered stipulations with the suppliers in which the suppliers agreed to deliver construction material and disclose any effort to interfere with such deliveries. The unions argued that the stipulations were injunctive consent decrees. The *Johnston* court held that the stipulations were not injunctions, reasoning that:

> The agreements embodied in the stipulations do not apply to the unions, because the unions were not parties to them. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 575, 104 S. Ct. 2576, 2586, 81 L. Ed.2d 483 (1984); *United States v. Ward, Baking Co.*, 376 U.S. 327, 334, 84 S. Ct. 763, 768, 11 L.Ed.2d 743 (1964). *The agreements apply only to the parties thereto.* Accordingly, even if a settling party agrees with a union not to make a delivery, although the settling party might subject itself to penalties under the agreement, *the union could not be liable for acting in concert with the settling party to violate the agreements*.

*Id.* at 1148 (emphasis added).

The stipulations in *Johnston*, however, are distinguishable from the consent decree. Specifically, the consent decree binds the Unions. It is clear from the language of the consent decree that it contains an injunction enjoining "[a]ny person who violates" its provisions. Therefore, we have jurisdiction over the consent decree under 28 U.S.C. § 1292(a)(1).

Armco argues that even if the consent decree includes an injunction, however, this Court lacks jurisdiction to consider the Unions' appeal because the consent decree is an interlocutory order. This argument lacks merit. Under 28 U.S.C. § 1292 (a)(1), we have jurisdiction over appeals from preliminary as well as final injunctions.

Armco also argues that we lack jurisdiction over the consent decree because it lacks specificity. This argument also lacks merit. While the consent decree does not specify,

for example, the exact dimensions of the no-walk zone, the overall nature and extent of the relief granted is specified. Further, there is no specificity requirement in 28 U.S.C. § 1292 (a)(1).

Having determined that the consent decree contains an injunction such that this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), we must now consider whether the entry of the consent decree was proper.

### B.  Standard of Review

We review a grant of a preliminary injunction for an abuse of discretion. *See Allied Systems Ltd. v. Teamsters National Automotive Transporters Industry Negotiating Committee, Local Union 327*, 179 F.3d 982, 985 (6th Cir. 2000). An abuse of discretion is present when the district court "applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Id.* at 286. We review the district court's findings of fact for clear error, and its conclusions of law *de novo. See id.* (citing *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996)).

### C.  The Norris-LaGuardia Act

The Unions argue that the Norris-LaGuardia Act ("the Act"), 29 U.S.C. § 101, divested the district court of jurisdiction to enter the consent decree because it failed to conduct an evidentiary hearing. Enacted to "tak[e] the federal courts out of the labor injunction business," *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Association*, 457 U.S. 702, 712 (1982), the Act deprives federal courts of jurisdiction "to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a

labor dispute" without first conducting an evidentiary hearing. 29 U.S.C. § 101.[3]

The district court concluded in the Memorandum of Opinion explaining the reasons for its approval of the consent decree that the § 1983 claim of conspiracy against the City resolved by the consent decree did not arise out of a labor dispute, reasoning:

> The Consent Decree enforces a settlement of the 1983 claims against the Mansfield Defendants. These claims do not arise out of a "labor dispute" as defined in the Act because they do not relate to the terms and conditions of employment, or the representation of the employees in negotiating or fixing the terms and conditions of

---

[3]Specifically, a district court may not issue an injunction in a case involving or growing out of a labor dispute before taking the following steps:

> . . . hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect–
> (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;
> (b) That substantial and irreparable injury to complainant's property will follow;
> (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
> (d) That complainant has no adequate remedy at law; and
> (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107.