*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0436p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHIGAN AMERICAN FEDERATION OF STATE
COUNTY AND MUNICIPAL EMPLOYEES
COUNCIL 25, LOCAL 1640,
                    *Plaintiff-Appellee,*

    *v.*

MATRIX HUMAN SERVICES; VISTA NUEVAS
HEAD START; and, MARCELLA WILSON,
                    *Defendants-Appellants.*

> No. 09-1032

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-12495—George C. Steeh, District Judge.

Submitted: November 17, 2009

Decided and Filed: December 23, 2009

Before: MARTIN and ROGERS, Circuit Judges; REEVES, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Michael R. Blum, FOSTER, SWIFT, COLLINS & SMITH, P.C., Farmington Hills, Michigan, for Appellants. Robert D. Fetter, MILLER COHEN, P.L.C., Detroit, Michigan, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. In this case, we confront the question of whether a defendant who successfully obtains dissolution of a temporary restraining

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

order or preliminary injunction in a labor dispute case may recover its damages, fees and costs under section seven of the Norris-LaGuardia Act, 29 U.S.C. § 107, if no bond was ordered prior to dissolution of the injunction. We answer in the affirmative and therefore **REVERSE** the decision of the district court.

## I.

Matrix Human Services and its co-defendants operate a Head Start program in Detroit, Michigan, which employs teachers and other staff. The Michigan American Federation of State, County, and Municipal Employees Council 25, Local 1640 is the union that represents those employees.

In 2003, Matrix reduced the length of the Head Start program from twelve to ten months due to monetary restraints and, thus, only paid its employees for ten months of work. Each year thereafter, Matrix made a determination of whether it could afford to provide its employees with year-round healthcare benefits or whether it needed to reduce those benefits to coincide with the ten months of wages and work.

Matrix informed the union on October 30, 2007 that it would only provide ten months of healthcare benefits for the 2008 calendar year. Matrix told the union that employee healthcare benefits would terminate as of June 6, 2008 and pick back up on August 18th. Matrix also provided the union with instructions on how its members could purchase medical coverage through the federal Consolidated Omnibus Budget Reconciliation Act (COBRA) program to bridge the roughly two-month gap.

In accordance with the parties' collective bargaining agreement, the union filed a grievance regarding the healthcare issue on November 9, 2007. On April 3, 2008, the American Arbitration Association notified the parties that it would hold an arbitration hearing on October 29, 2008—more than two months *after* Matrix planned to resume paying for employee healthcare benefits.

On June 5, 2008, just one day before coverage was set to lapse, the union filed a complaint in the Circuit Court of Wayne County, Michigan seeking to enjoin Matrix

from discontinuing the benefits.[1]   The union also moved for an *ex parte* temporary restraining order prohibiting Matrix from proceeding with its plan to cease paying for coverage the following day, June 6th.  Apparently without Matrix's ever being aware of the complaint and motion, the Michigan state court granted the *ex parte* temporary restraining order.  Notably, at least for purposes of this appeal, the state court did not require that the union post an injunction bond.

The state court's temporary restraining order kicked off a three-week frenzy of litigation.  Upon receipt of the complaint and the *ex parte* temporary restraining order, Matrix promptly removed the case to the United States District Court for the Eastern District of Michigan on June 11th, asserting that the union's claim actually arose under the federal labor laws.  On June 13th, Matrix moved to dissolve the temporary restraining order.  The district court heard argument on Matrix's motion on June 26th and, on July 1st, dissolved the temporary restraining order due to the union's failure to show irreparable harm.  During this period—from June 11th, when Matrix removed to federal court, to July 1st, when the district court dissolved the temporary restraining order—Matrix did not move the federal court to impose an injunction bond as a condition of the union's keeping the injunction in place.

Things slowed down after the court dissolved the temporary restraining order on July 1st.  On September 24th, Matrix moved to dismiss the complaint on the grounds that the claims were then moot.  The union agreed and, on October 30th, the district court dismissed the case.  However, the court denied Matrix's request for fees and costs as a "prevailing party" under Federal Rule of Civil Procedure 54(d)(1).

Thus, on November 12th, Matrix moved to recover approximately $28,000 in fees and costs incurred in seeking dissolution of the temporary restraining order.  The

---

[1]The record is silent as to what happened between April 3rd, when the union found out that it would not have a hearing on its grievance until October, and June 5th, when the union filed its complaint and obtained the *ex parte* temporary restraining order, and is also silent about why the union waited until one day before the benefits were set to lapse to file its complaint.  Matrix suggests that it was a purely strategic decision by the union to blind-side the state court by running in arguing about losing health benefits the next day.

basis for Matrix's motion was section seven of the Norris-LaGuardia Act. The union responded that Matrix may not recover fees and costs because a defendant who successfully dissolves an injunction may recover under section seven only against an injunction bond and, in this case, no bond was ever ordered by either the state or federal court or posted by the union. Matrix put forth two arguments in response. First, it contended that the only reason that there was no bond was because the union got a state court to issue an *ex parte* temporary restraining order behind Matrix's back instead of bringing its claim in federal court and providing Matrix with sufficient notice to appear at the temporary restraining order hearing and to request a bond. It would not be fair, Matrix argued, to preclude it from recovering its fees on the basis of the union's ill-conceived litigation strategy. Second, Matrix argued that it may recover its fees in any event because section seven of the Act does not necessarily condition recovery of fees on a bond's actually being in place.

The district court agreed with the union, *Michigan American Federation of State County and Municipal Employees, Council 25 v. Matrix Human Services*, No 08-cv-12495, 2008 U.S. Dist. LEXIS 107493 (E.D. Mich. Dec. 12, 2008); Matrix timely appealed.

## II.

We typically review injunctive actions for abuse of discretion. *Armco, Inc. v. United Steel Workers, Local 169*, 280 F.3d 669, 678 (6th Cir. 2002). However, whether section seven of the Act allows for recovery of attorney's fees in the absence of a bond is a question of law, which we review *de novo*. *Id.*

## III.

Matrix makes essentially the same arguments on appeal as it made in the district court. The union primarily contends that the statute clearly conditions recovery of fees on the presence of a bond and that Matrix effectively waived its right to recover under

section seven when it did not move the district court to impose a bond prior to ruling on the motion to dissolve the temporary restraining order.[2]

Whether a defendant who successfully dissolves an interlocutory injunction in a labor case can recover under section seven of the Act in the complete absence of a bond is a question of first impression. Other courts have gotten close to the question but have reached differing conclusions, and we have previously discussed in *dicta* the recovery of fees in under section seven.

In 1945, the Court of Appeals for the Eighth Circuit held that an injunction defendant could not recover fees and costs under section seven independent from or in excess of the bond previously imposed by the trial court. *Int'l Ladies' Garment Workers Union v. Donnelly Garment Co.*, 147 F.2d 246, 252-53 (8th Cir. 1945). There, the defendant had incurred many thousands of dollars in fees and costs in seeking to dissolve an injunction, but the district court had only ordered that the plaintiff post a bond of $2,000. In ruling that the defendant could not recover more than the total of the bond, the court stated:

> We may not suppose that Congress, in imposing upon the court the duty of determining the amount of security adequate to the protection of a defendant, and just to a plaintiff, intended that the court's determination should be wholly ineffectual and without meaning as the measure of plaintiff's liability upon his undertaking. We think the statutory requirement of a bond, upon certain conditions, in an amount to be fixed by the court is conclusive evidence of the legislative intention that the bond should be the evidence and the measure of plaintiff's liability and defendant's protection.

---

[2] The union also argues that the Norris-LaGuardia Act does not apply to this case, or at least did not apply until the case was removed to federal court, because the temporary restraining order was issued by a state court and the Act only applies to a federal court's ability to issue an injunction in a labor dispute. Matrix responds that the Act, as part of the labor relations laws, preempts state law and that section seven's bond requirement was therefore a precondition on the state court's ability to issue the temporary restraining order. Whether section seven's bond requirement extends to the state courts is a difficult question of federalism and federal labor policy. We need not answer this question because, as we discuss below, the Act's bond requirement is part of the jurisdictional precondition for injunctions in federal courts arising out of labor disputes. *See* 29 U.S.C. §§ 101, 107 (setting jurisdictional requirements) & § 113 (defining "labor dispute"). As soon as the case was removed to federal court and its jurisdiction invoked, the Act and its bond requirement applied. Thus, because Matrix may recover under the Norris-LaGuardia Act without regard to the fact that the injunction originated in state court, we need not address the preemption question.

*Id.* at 252.  The court further reasoned that:

> Necessarily, at the beginning of an action, the amount of security adequate for a defendant's protection is a matter of estimate.  It may be fixed in a sum which the event proves inadequate or excessive.  If the security required by the court becomes inadequate while the restraint continues and the litigation proceeds, a defendant has ready to hand the means for his protection by a motion for an increase in the amount of the security.

*Id.* at 252-53.

Taking the exact opposite view, in 1972 the Court of Appeals for the Third Circuit held that "the liability of the plaintiff for loss, expense or damage under § 7 was not intended by Congress to be restricted solely to the amount of whatever bond the court may have required" and, thus, "in any case involving a labor dispute the liability of the plaintiff, though not of any surety, for loss, expense or damage, including attorneys' fees, under § 7 of the Norris-LaGuardia Act shall be fixed by the court without regard to any limitation in an injunction bond." *U.S. Steel Corp. v. United Mine Workers*, 456 F.2d 483, 493 (3d Cir. 1972).  That court read section seven to create two different liabilities, one being the bond secured by a surety and the other being an unsecured liability on the plaintiff to pay the delta, if any, between the bond and the defendant's damages, fees and costs.  *Id.* at 492-93.

Our closest cases are *Aluminum Workers International Union, Local No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437 (6th Cir. 1982) and *International Union, United Automobile Workers v. LaSalle Machine Tool, Inc.*, 696 F.2d 452 (6th Cir. 1982). In *Consolidated Aluminum*, the district court had entered an injunction and imposed a $1,000 injunction bond.  The defendant brought an interlocutory appeal, arguing both that the injunction exceeded the district court's authority under Norris-LaGuardia and that the district court had used an incorrect analysis in setting the injunction bond.  We agreed that the injunction was beyond the district court's jurisdiction, and also found that the district court had failed to pay heed to the considerations mandated by section seven

in setting the bond. We therefore vacated the injunction and "remanded for rehearing on the issue of [the defendant's] damages." *Id.* at 446.

In *LaSalle Machine Tool*, one question on appeal was whether a preliminary injunction that had been imposed "pending arbitration" was rendered moot when, in the intervening period, the arbitrator had rendered a decision and thus the injunction expired by its own terms. We held that the appeal of the injunction was not moot because there was still a question as to whether the injunction defendant could recover against the bond. Thus, we had to determine whether the injunction was improperly granted as an antecedent to determining whether the defendant could recover against the bond. 696 F.2d at 458-59. We further stated:

> After this opinion had been prepared, but before its release, the union filed a statement with this court to the effect that no bond was ever actually posted in this case. This does not alter our decision on mootness. The issuance of an injunction in a case involving or growing out of a labor dispute must be conditioned on an undertaking by the person seeking the injunction to make the person enjoined whole for any loss, expense or damage caused by the improvident or erroneous issuance of the injunction. This requirement is made jurisdictional by § 1 of the Norris-LaGuardia Act, 29 U.S.C. § 101 . . . . Having sought and obtained a preliminary injunction the union is obligated to pay the costs and damages incurred or suffered by the party found to have been wrongfully enjoined. The district court ordered "an undertaking" in the form of a bond. The fact that the bond which was ordered by the district court was not filed is immaterial.

*Id.* at 459.

Thus, there is no authority directly on point for the question whether a defendant may recover when no bond was ordered, and the circuits are split on the extent of an injunction defendant's ability to recover independent from or in excess of an injunction bond. Our closest cases are united on the proposition that failures in the bond area—an improper analysis by the district court or a plaintiff's failure to post a bond—do not preclude a defendant from recovering under section seven of the Act. But neither case concerns a district having never ordered a bond, and neither goes so far as to hold that

recovery may be independent of section seven's bond requirement. Therefore, we believe it helpful to start the analysis afresh and then return to the case law to determine whether Matrix or the union has the better part of the matter.

We begin with basic principles. Matrix seeks to recover the attorney's fees that it incurred in trying to rid itself of the union's temporary restraining order. It is fundamental in our civil system that each party to a lawsuit bears its own costs unless a statute or agreement provides otherwise. *See, e.g.*, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 256 (1975) (detailing the history of the ability to recover fees in the American system and stating "absent statute or enforceable contract, litigants pay their own attorneys' fees"); *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 753 (6th Cir. 1996) ("Under the American Rule, unless a contract or a statute expressly authorizes an award of attorneys' fees, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.") (citing *Alyeska*); *McAuley v. Gen. Motors Corp.*, 578 N.W.2d 282, 285 & n.7 (Mich. 1998) (stating that Michigan "follows what is commonly termed the 'American rule' with regard to payment of attorney fees," which is that a party may not recover its fees absent express authorization by statute or contract). Thus, though it may seem unfair, we may not award fees to a party unless we are authorized to do so by statute or agreement.

In this case, Matrix points to section seven of the Act as the font of its entitlement to fee shifting. We must therefore examine that statute to determine whether it allows Matrix to recover in these circumstances. The statute provides, in relevant part:

> No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.

The undertaking mentioned in this section shall be understood to signify an agreement entered into by the complainant and the surety upon which a decree may be rendered in the same suit or proceeding against said complainant and surety, upon a hearing to assess damages of which hearing complainant and surety shall have reasonable notice, the said complainant and surety submitting themselves to the jurisdiction of the court for that purpose. But nothing in this section contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity.

29 U.S.C. § 107.

Although drafted in the 1930s using the legalese that was the vernacular of that era, we find this statute to be unambiguous. "An undertaking with adequate security" is just a five-word way of saying "bond," and, indeed, it is commonly accepted that section seven discusses bonds. *See, e.g.*, *Int'l Ladies' Garment Workers' Union*, 147 F.2d at 252 (citing Webster's dictionary for the proposition that an "undertaking" is ordinarily understood to be a bond). We are further convinced that the plain language of section seven discusses *only* bonds. We therefore reject the Third Circuit's interpretation in *United States Steel* that section seven provides for two liabilities, one against the bond secured by a surety and another unsecured against the plaintiff.

In addition to the unambiguous text of the statute, other factors confirm our interpretation of section seven. First, this reading of the statute is implicit in our discussion of section seven in *Consolidated Aluminum*. There, we found that the district court had not considered the appropriate factors in setting the injunction bond and therefore remanded "for rehearing on the issue of [the defendant's] damages." 696 F.2d at 446. Had we read section seven as allowing recovery from the plaintiff independent of a bond, we would have simply remanded to assess damages; we need not have discussed the proper bond analysis. Instead, because we interpreted section seven to tie recovery of fees and costs to the amount of the bond, we remanded the case to the district court to redo the analysis of what would have been an appropriate bond under the considerations set forth in section seven and to allow recovery against whatever that

amount turned out to be.[3] Our reading of section seven is also reinforced by the Supreme Court's statement that generally "[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 770 n.14 (1983).[4] We therefore hold that section seven of the Norris-LaGuardia Act allows recovery only in relation to a bond set according to the conditions in the act. If it turns out that the bond is less than the total of the defendant's damages, the defendant will only be made partially whole; if the bond exceeds the defendant's damages, the defendant will be made whole.

At first blush, finding that the Act allows recovery only in relation to a bond would seem to be the end of the matter because, in fact, there was no bond in this case. But, Matrix claims, this conclusion does not dispose of the matter. According to Matrix, the fact that a bond was never actually ordered is irrelevant because a bond *should* have been ordered. Thus, Matrix, argues, we must now remand this matter back to the district court to order a bond that Matrix may then collect against. In support of this theory, Matrix cites our statements in *LaSalle Machine Tool, Inc.*, 696 F.2d at 459, where we stated that the Act's bond "requirement is made jurisdictional by §1 of the Norris-LaGuardia Act" and that "[h]aving sought and obtained a preliminary injunction the union is obligated to pay the costs and damages incurred or suffered by the party found to have been wrongfully enjoined" and our decision in *Consolidated Aluminum*,

---

[3]We recognize that this creates a somewhat difficult exercise on remand akin to putting the horse back in the barn. Injunctions are fluid situations. Much transpires between the time when a district court sets an injunction bond and when an appellate court has the opportunity to rule upon the propriety of a district court's analysis in setting the bond. Thus, on remand the court is privy to a lot more information than it had at the time it improperly determined the amount of the bond, yet it must place itself back in time to determine what a proper bond amount would have been at the time of the bond hearing. However, this approach is the only possible way to subject a lower court's injunction bond analysis to appellate review, *see, e.g.*, *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 745 (8th Cir. 2002) (amount of bond reviewed for abuse of discretion), without resulting in a potential windfall to defendants of recovering more than they would have had the court used the correct analysis in the first place. The case books are full of such legal fictions and the system still survives.

[4]*W.R. Grace* did not concern section seven of the Norris-LaGuardia Act. However, the Third Circuit cited *W.R. Grace* in its opinion in *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 n.9 (3d Cir. 1989) to question the continued validity of its holding in *United States Steel*.

696 F.2d at 446, where we remanded to the district court to re-conduct the bond analysis so that the defendant could recover in relation to a properly set bond.

We agree with Matrix that our prior statements indicate an ability to recover under section seven that is not necessarily tied to the amount of a bond that was ordered or posted prior to dissolution of the injunction. We also agree that, in light of these prior statements, it is not a large logical step to conclude that the district court could, even after dissolution of the injunction, determine what would have been a proper bond amount for purposes of Matrix's recompense. Thus, the only question is whether the statute and the policies underlying the requirement of an injunction bond allow for this scenario.

Beginning with the statute, although we do not interpret section seven to give rise to two distinct liabilities, *see supra*, we read the text as being silent on the question of whether a defendant may recover under section seven even though no bond was ordered prior to dissolution of the injunction. The statute merely requires that a bond be imposed as a precondition to the ability to enter a preliminary injunction and that a defendant is entitled to recover its damages and reasonable fees and costs against that bond in the event of an improvidently granted injunction. 29 U.S.C. § 107. It says nothing about how to proceed if, for whatever reason, a bond is not ordered or posted to begin with. In sum, though the statute does not explicitly state that Matrix *may* recover here, it makes clear that Matrix *should* have the ability to recover. Moreover, the statute certainly does not forbid the setting of a bond even after the injunction is dissolved and, indeed, our decision in *Consolidated Aluminum* envisions this very scenario. Thus, although the text of the statute does not answer the question squarely, it cuts in favor of Matrix's position insofar as it indicates that Matrix should be able to recover against a bond here and our prior cases indicate the same.

In the face of the statutory silence, we look to the underlying policies to determine whether Matrix may recover in this case. Of particular relevance are the policies underlying the existence of injunction bonds and whether allowing recovery

here would further or hinder those policies. Injunction bonds serve two purposes. As Professor Rendleman aptly explains it,

> An injunction bond has dual purposes. The judge grants plaintiff a preliminary injunction on an incomplete record before the litigation process has functioned; this increases the possibility of error that harms the defendant. On the plaintiff's side, posting a bond deters a plaintiff's rash application for an interlocutory injunction; paying a bond premium plus the chance of liability on it force a plaintiff to think carefully beforehand. On the defendant's side, if a plaintiff's incorrect interlocutory order harms the defendant, a bond provides a fund to compensate it.

DOUG RENDLEMAN, COMPLEX LITIGATION: INJUNCTIONS, STRUCTURAL REMEDIES, AND CONTEMPT 360-61 (2010); *see also, e.g.*, *Instant Air Freight*, 882 F.2d at 805 n.9 ("The bond can thus be seen as a contract in which the court and [the applicant] agree to the bond amount as the price of a wrongful injunction.") (citations and internal quotations omitted).

On the one side, injunction bonds act as a rough estimate of what the defendant's damages may be and protect injunction defendants against improvidently issued injunctions by requiring plaintiffs to compensate defendants for improvidently issued injunctions and by ensuring that the plaintiffs are able to do so. The district court found that the temporary restraining order was improvidently granted, so allowing Matrix to recover here, at least in part, would further the compensatory purpose of injunction bonds.

On the other side, injunction bonds also serve as a gut-check for the plaintiff, making sure that the plaintiff has a financial risk in the outcome of the litigation if it wants to seek the extraordinary remedy of a preliminary injunction. It would do violence to the gut-check goal of injunction bonds to allow a plaintiff to avoid the burden of a bond based on nothing more than the happenstance of the trial judge not ordering a bond. For reasons of consistency and predictability, we believe it the best course to make clear that, whenever a plaintiff obtains interlocutory injunctive relief in a labor case and the injunction is subsequently dissolved under the federal labor laws, the plaintiff will have

to post a bond.**5** This is so even if, for whatever reason, the bond is not ordered or posted until after dissolution of the injunction. Although in these cases the plaintiff does not get actual notice of the extent of its potential liability, it is still aware of both the potential for liability and the considerations set forth in section seven used to determine the amount of liability.

In sum, we find that both of the dual policies underlying the imposition of injunction bonds counsel in favor of remanding to allow the court to determine an appropriate bond amount that Matrix may then recover from the union. Although we recognize that this reasoning places us at odds with some of our sister circuits, we find this to be the only conclusion that harmonizes our prior cases with the statute.

Finally, we reject the union's argument that Matrix waived its right to recover by not affirmatively seeking a bond prior to dissolution of the injunction. Although we certainly agree that this would have been the more efficient course, we do not agree that Matrix's right to recover evaporated because it did not seek imposition of a bond. The Act makes clear that a bond is an absolute precondition of a federal court's jurisdiction over labor injunctions. 29 U.S.C. §§ 101, 107; *LaSalle Machine Tool*, 696 F.2d at 459. As soon as the district court's jurisdiction was invoked on removal, so too was section seven's bond requirement. Because the bond requirement arose as soon as the case was removed, Matrix had no affirmative duty to seek a bond. Thus, although we do not fault the district court for not *sua sponte* ordering a bond prior to dissolution of the temporary restraining order, the court nevertheless erred in finding that it was powerless to do so afterward.

---

**5**We wish to make clear that this statement does not apply to that small category of cases in which we have allowed interlocutory injunctive relief without posting a bond.

**IV.**

For the reasons set forth above, we **REVERSE** the decision of the district court denying Matrix's section seven motion for recovery of fees and costs, and **REMAND** for the district court to determine what would have been an appropriate bond at the time of removal, which amount shall be the maximum of Matrix's recovery from the union.